364 So.2d 798 (1978)
Robert Leith LAWS, Appellant,
v.
Sandra Ayres LAWS, Appellee.
No. 77-1766.
District Court of Appeal of Florida, Fourth District.
November 8, 1978.
Rehearing Denied December 20, 1978.
*799 Joe Teague Caruso of Wolfe, Kirschenbaum, Caruso & Mosely, P.A., Cocoa Beach, for appellant.
Benjamin Y. Saxon of Saxon & Richardson, P.A., Melbourne, for appellee.
PAUL, MAURICE M., Associate Judge.
Appeal by the Husband from a final judgment of dissolution of marriage awarding the Wife, as special equity, (1) all of the Husband's interest in certain real property theretofore held as a tenancy by the entireties, (2) the furniture and furnishings located in the real property, and (3) a 10% interest in stock of the Bendix Corporation and Facet, Inc., which was in the sole name of the Husband. The Wife has filed a cross appeal alleging error by the trial judge in awarding the Husband a 10% special equity in the real property and furniture and furnishings, plus the Court's refusal to award her alimony of any description.
The parties were married in 1967, a little over ten years prior to the filing of the Petition for Dissolution of Marriage, and 174 days after the Wife was divorced from her former Husband. Under the terms of a "Separation, Custody, and Property Settlement Agreement", the Wife received from her former Husband the real property which is the subject of this appeal, said property being described as "... the residence of the parties and four rental units ...". At the time of her prior divorce, the real property was encumbered by a $39,000.00 first mortgage, a $10,000.00 second mortgage, $1,410.76 owed on the furniture, *800 a $1,996.25 swimming pool loan, and a $1,500.00 personal loan, with the former Husband assuming responsibility to pay the second mortgage ($10,000.00) and the $1,500.00 personal loan.
In the case sub judice, the parties moved into the home and rented the apartments, the rental proceeds going into a joint account to pay bills and the mortgage payment. The Wife was employed for a short time after the marriage and then again for a year in 1973 or 1974, becoming continuously employed for the last 2 1/2 years prior to the instant dissolution. During the six years the Wife was unemployed, the Husband was the sole support of the family (including the Wife's two children by the former marriage), his money being placed in the joint account and used to pay, among other things, the first mortgage payment on the property ($395.00 per month). During the marriage, the Husband considerably improved the landscaping of the property, performed the minor maintenance and repair work, and shared responsibility for collecting the rents and keeping the books.
At the time of the final hearing, the first mortgage balance was $28,400.00 (down from $39,000.00); the second mortgage balance was $2,600.00 (down from $10,000.00); the pool loan had been fully paid; the home and apartments were valued at $100,000.00.
The real property in question remained in the Wife's former married name until January of 1968 when she, joined by the Husband, conveyed it to a strawman who, in turn, conveyed it back to the Wife, this time in her married name. At the time of this conveyance in January of 1968, the Wife executed a will leaving the property at her death to her Husband, Robert Laws. In December of 1968, the Wife, by warranty deed, conveyed the property to herself and her Husband, creating therein an estate by the entireties in and to the property here in question. The Wife testified that (1) she did not intend to make a gift of the property to her Husband, and (2) the deed was executed to put the property "... in both of our names in the event something should happen to me, he would have a place to take care of my children." and (3) "... because I felt that we were married and that it wasn't right that it was just left strictly in my name and I did that as a gesture of good faith in the marriage." At the time of conveying the property to her husband and up until two months prior to the final hearing, the Wife's will continued to name the Husband as sole beneficiary of the property.
The case of Ball v. Ball, 335 So.2d 5 (Fla. 1976) and its progeny, is dispositive of the issue as to donative intent.
As stated in Ball, supra, at pages 7 and 8:
"(1, 2) We begin our resolution of these conflicting decisions with the premise that, in the absence of any showing by either spouse in the marriage dissolution proceeding as to why one should be awarded more than an equal proportion of real property held as tenants by the entireties, record title speaks for itself."
"(3, 4) The premise that record title bespeaks an equal division is, of course, only the starting point for a property division. Either spouse has the right to attempt to establish a "special equity" in the realty by reason of his or her extraordinary contribution toward its acquisition, either financially or through personal industry and service to the other party. The other party, of course, can negate the attempted showing or affirmatively attempt to show that a gift was intended... . we hold that a special equity is created by an unrebutted showing, as was developed here, that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship. In these cases the property should be awarded to that spouse, as if the tenancy were created solely for survivorship purposes during coverture, in the absence of contradictory evidence that a gift was intended."
"(5) In using record title as the touchstone and requiring some evidentiary showing beyond that for an award other than an equal division, it becomes unnecessary to use judicially-created presumptions *801 of any sort in these proceedings. All presumptions which the different status of the sexes required the courts to create prior to the constitutional change, and all presumptions developed by the courts since that date are now unnecessary."
Clearly, the evidence establishes that the real property was acquired by the Wife prior to her marriage. This being so, the Husband must affirmatively attempt to show that a gift was intended at the time the property was placed in the joint names (emphasis supplied). The question of donative intent is one of a preponderance of the credible evidence.
While it is true that "... a word or two of testimony by the recipient spouse, to the effect that the other intended a gift ...", does not obliterate "... the special equity resulting from an unrebutted showing that the grantor spouse acquired the property from sources entirely independent of the marriage", Merrill v. Merrill, 357 So.2d 792, 793 (Fla. 2d DCA 1978), neither is the simple denial of donative intent by the donor spouse dispositive of the question.
As stated by the Court in Merrill, supra, at 793: "The question of donative intent is one of a preponderance of the credible evidence ..."; but the finding of the chancellor as to donative intent is not binding on the appellate court where "... there is no credible evidence of such intent below." Bickerstaff v. Bickerstaff, 358 So.2d 590 (Fla. 1st DCA 1978).
All of the evidence relative to donative intent, except the bald assertion of the Wife, clearly and unequivocally shows that the Wife did intend to make a gift to her husband of an interest in the property at the time she executed the deed creating an estate by the entireties in December of 1968. The Wife's unsupported assertion that no gift was intended cannot refute the uncontradicted evidence in this record. Passage of time and the interest to be served have a way of coloring or changing a person's recollections, but the documentary evidence is not subject to such imperfection and stands as immutable and irrefutable memorials to the true intent of the parties.
It is apparent that the trial court was attempting to do "equity" in the case, but in that quest for "equity", the legal rights of the respective parties cannot be trammelled. Apparently the trial judge understood this for, at page 86 of the transcript, he told the Wife's attorney, "Your client is lucky to save the property. I can assure you of that. She is now saving her property, unless she appeals. So, that is my ruling. That is my ruling.", and at page 87: "No, I am trying to keep from causing an appeal and Mrs. Laws might lose her apartment house."
What is here stated about the real property is also applicable to the award of an interest in the furniture and furnishings located therein.
Conversely, there are no facts which can support a finding that the Wife has a 10% special equity in the Husband's stock which stands in his name alone. The stock in question was acquired as a result of a stock purchase agreement between the Husband and his employer, he contributing 12% of his salary each month and the company adding an additional 4%.
Lastly, the Wife's appeal from a denial of alimony. Both parties are educated and gainfully employed, the Wife as a tax examiner with the Internal Revenue Service, the Husband as a supervisor with the Bendix Corporation. More important to this appellate point though, is that the Wife did not request alimony at the final hearing. Having advised the trial court she was not seeking an award of alimony, she cannot complain on appeal the failure to make such award.
Wife's application for attorney fees is denied.
Final Judgment is REVERSED with directions to the lower court to enter judgment decreeing the parties to be tenants in common of the real property and furniture and furnishings in question and denying the *802 Wife any "special equity" in the stock standing in the sole name of the Husband.
The denial of alimony is AFFIRMED.
CROSS, and MOORE, JJ., concur.