570 So.2d 1338 (1990)
Alina PORTUONDO, Appellant,
v.
Juan M. PORTUONDO, Appellee.
No. 89-2293.
District Court of Appeal of Florida, Third District.
September 11, 1990.
On Motion for Rehearing or Clarification December 26, 1990.
*1339 Ackerman, Senterfitt & Eidson and Richard C. Milstein, and Paul Hampton Crockett, Miami, for appellant.
Fine, Jacobson, Schwartz, Nash, Block and England and Linda Ann Wells, Miami, for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
PER CURIAM.
Alina Portuondo [the wife] appeals a final judgment dissolving her marriage to Juan M. Portuondo [the husband]. We affirm in part, reverse in part and remand with directions.
In this appeal, the wife disputes the trial court's distribution of marital assets and the award of rehabilitative alimony. She also challenges the trial court's order finding that the husband had no duty to support his stepdaughter and directing that she pay her own attorney's fees and costs.
The husband and wife were married in 1975. The husband had already secured a masters degree in business administration. The wife had not yet completed college, and had a sixteen month old child, Ali, from a prior marriage. The husband never adopted Ali, but in all ways acted as though she were his daughter. The fourteen year marriage produced one child, Marisa, who is still a minor. In November 1988, the wife petitioned for a divorce.
The trial court entered the final judgment of dissolution of marriage on September 11, 1989. The trial court ordered shared parental responsibility of Marisa and ordered the husband to pay child support for Marisa. However, the court found that the husband had no obligation to pay child support or assume any other type of financial responsibility for Ali. The court equitably distributed the marital assets specifically giving the husband a special equity in the escrow account. The husband was awarded sixty percent of the escrowed funds and the wife was awarded the remaining forty percent. In addition, the husband was ordered to pay all outstanding credit card debts. The court found that the wife, who was thirty-seven years old and had worked both full time before and during the marriage, could become gainfully employed and, therefore, was not entitled to permanent alimony. But, the court *1340 did award her $60,000.00 as non-modifiable, lump sum, rehabilitative alimony for three years to enable her to effect her transition into the labor market. Finally, the court ordered each party to bear their own costs and fees.
First, we address the distribution of assets. We find that the trial court improperly found that the husband was entitled to a special equity in the parties' escrow account.
At the time of the marriage, the husband owned as his separate property a house known as the "Fernwood house" which was and remained titled solely in his name. The parties lived in this house until 1979. In 1979, as part of his parents' estate planning, the husband conveyed the Fernwood house to his parents in exchange for their house, which was known as the "Island Drive house". The parties took title to the Island Drive house as tenants by the entireties. At the time the parties acquired the Island Drive house, the parties executed a mortgage and note in the amount of $93,100.00 in favor of the husband's parents. However, the parties never made any payments on that mortgage and in 1983 the mortgage was entirely forgiven. A satisfaction of mortgage was executed on October 20, 1983. The husband's father testified that he intended this as a gift solely to his son. In 1988, the parties sold the Island Drive house, deposited the sale proceeds into a joint bank account, and moved into a rental residence. The husband contends that no other funds were deposited into that account and that, therefore, his separate funds were not intermingled with joint funds. The parties then withdrew money from that account to make the down payment on a vacant lot. The husband admits that after the down payment was made other funds were deposited into that account. The parties then sold the lot and placed the proceeds therefrom into a jointly titled bank account which is currently held in escrow. This escrow account which contained approximately $575,000.00 at the time of the final hearing is the only substantial marital asset subject to equitable distribution. The husband claimed a special equity in the escrow account.
After considering the testimony and evidence, the trial court found that the husband had proven a special equity in the escrow account based upon the forgiveness of the mortgage by his parents and his ability to trace the funds constituting that gift into the escrow account. The trial court based its decision on the testimony of the husband's father that in forgiving the mortgage, it was his intention to gift the entire amount of the mortgage solely to his son. However, the evidence reveals that the parties held title to the Island Drive home as tenants by the entireties. Both the husband and the wife were legally obligated under the mortgage and note, and any forgiveness thereof flowed equally to both parties. In addition, the testimony of the husband's father itself undercuts the finding of a gift to the husband alone. The husband's father testified that he forgave the entire mortgage obligation over the course of four years. He further testified that under the advice of tax counsel, he and his wife gifted an annual amount of $3,000.00 each towards the reduction of the mortgage debt as a gift to their son. This would mean that the husband's parents gave him a gift of $6,000.00 for the years 1979 through 1981. However, in 1981, the Internal Revenue Code was amended and increased the gift tax exemption from $3,000.00 per donee to $10,000.00 per donee. As a result, the husband's parents would then have been able to gift an annual amount of $10,000.00 each towards the reduction of the mortgage debt as a gift to their son during 1982 and 1983. Under the tax code, the maximum amount of money that the son could have received during these years without either the husband's parents or the husband incurring tax liability was $58,000.00. The husband's father testified that he did not file any tax return, indicating that he was gifting any money to his son, "because it was tax-free." The only possible explanation for the satisfaction *1341 of the $93,100.00 in four years was that the husband's parents made gifts to both the husband and the wife.
"The question of donative intent is one of a preponderance of credible evidence". Merrill v. Merrill, 357 So.2d 792, 793 (Fla. 1st DCA 1978). Therefore, if there is no credible evidence of such intent below, the finding of the trial judge as to donative intent is not binding on the appellate court. See Laws v. Laws, 364 So.2d 798 (Fla. 4th DCA 1978); Bickerstaff v. Bickerstaff, 358 So.2d 590 (Fla. 1st DCA), cert. denied, 365 So.2d 709 (Fla. 1978). In the present case, the evidence clearly and unequivocally shows that the husband's parents did intend to make a gift to both the husband and the wife. The husband's father's testimony that no gift was intended cannot be reconciled with his additional testimony that he forgave the entire mortgage debt as a gift over four years and that he did not report the gift to the Internal Revenue Service since there was no tax liability. "Passage of time and the interest to be served have a way of coloring or changing a person's recollections, but the documentary evidence is not subject to such imperfection and stands as immutable and irrefutable memorials to the true intent of the parties." Laws, 364 So.2d at 801. We conclude that there was no competent evidence in the record to support the trial court's judgment that the husband was entitled to a special equity. See Shaw v. Shaw, 334 So.2d 13 (Fla. 1976) (appellate court has right to reject incredible and improbable testimony or evidence); Marrone v. Miami Nat'l Bank, 507 So.2d 652 (Fla. 3d DCA 1987) (appellate court will not disturb trial court's findings unless they are totally unsupported by competent and substantial evidence); Bowen v. Bowen, 347 So.2d 675 (Fla.3d DCA 1977) (no competent evidence to support trial court's judgment that wife not entitled to special equity). Therefore, the part of the judgment awarding the husband a special equity is reversed.
The wife also attacks the trial court's equitable distribution of the marital assets on the grounds that the court abused its discretion by failing to establish a suitable residence for the wife and the children prior to effecting an equitable distribution. We disagree.
In essence the wife is asking this court to find a special equity or other basis to support a special award from the only marital asset, the escrowed funds. Absent a special equity or some other compelling legal or practical reason, one spouse is not entitled to the other spouse's share of the marital assets. Halberg v. Halberg, 519 So.2d 15, 17 (Fla. 3d DCA 1987); Wynn v. Wynn, 478 So.2d 380 (Fla.5th DCA 1985). In this case, the wife has not established any justification for going beyond the equal division starting point. See Carroll v. Carroll, 471 So.2d 1358, 1361 (Fla. 3d DCA), rev. denied, 482 So.2d 347 (Fla. 1985). The fact that the parties did not own a home in addition to the proceeds from the sale of the lot, does not entitle the wife to more than one-half of the proceeds from the lot. The wife is not being forced to deplete her assets for support; she is simply converting one asset to another if she buys a home. We have awarded the wife one-half of the marital assets, approximately $287,500.00. This is more than sufficient to obtain adequate housing. Cf. Teague v. Teague, 551 So.2d 1242, 1243 (Fla. 1st DCA 1989), rev. denied, 562 So.2d 347 (Fla. 1990) (wife exhibited special need making invasion of husband's non-marital assets necessary for purpose of providing home to wife and children). Therefore, we find that the trial court properly denied the wife's request to set aside an appropriate amount for housing prior to the equitable distribution of the marital asset.
Second, we address the issue of the wife's support. The wife contends that the trial court erred in ordering rehabilitative alimony in the form, amount and duration awarded, and in failing to order that the wife receive permanent alimony.
We find that the form of the rehabilitative alimony award was improper. *1342 The trial court improperly created the novel remedy of "non-modifiable, lump sum, rehabilitative alimony". In light of the fact that the wife is attending law school and has no track record in the legal field, no justification exists for forever slamming the door on modification of the award. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Blumberg v. Blumberg, 561 So.2d 1187 (Fla.3d DCA 1989).
We agree with the trial court that the wife is entitled to rehabilitative alimony. She has undertaken a rehabilitative program that requires financial support. See Villaverde v. Villaverde, 547 So.2d 185, 187 (Fla. 3d DCA 1989). Although the wife is capable of being self-supporting immediately, having a real estate brokerage license and a bachelor's degree in public administration, the wife desires to become an attorney. She is entitled to fulfill her potential by receiving a law school education rather than accepting a less rewarding job immediately. See Blumberg v. Blumberg, 498 So.2d 1387, 1388 (Fla.3d DCA 1986), rev. denied, 508 So.2d 13 (Fla. 1987). Therefore, the trial court erred in finding that the wife can begin employment immediately. Unlike Poppe v. Poppe, 412 So.2d 38 (Fla. 3d DCA 1982) and similar to Blumberg, 498 So.2d at 1387, the husband's income would far exceed the wife's possible income and, hence, the wife is entitled to reasonable rehabilitative alimony. We find that the trial judge did not abuse her discretion in making the award of rehabilitative alimony; the award is reasonable. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980).
For these reasons, we affirm the amount and duration of the rehabilitative alimony award, but reverse the form of the award and remand with directions to make the award subject to modification.
Further, we find that the trial court did not err in failing to award permanent alimony. Upon consideration of the criteria to be used in establishing the wife's need for permanent periodic alimony as set forth in Canakaris, 382 So.2d at 1201-02, we have determined that the wife is not entitled to permanent alimony. If the wife is unable to resume employment and support herself in a lifestyle anywhere near the standard of living she enjoyed during the marriage, the rehabilitative alimony may be converted to permanent periodic alimony. See Id. at 1202.
We next turn to the issue of support of the wife's child from a previous marriage, Ali. The wife contends that the trial court erred in finding that the husband had no duty to provide child support for his stepdaughter, Ali. We disagree. The husband has no legal or other obligation to support Ali since the husband's marriage to Ali's mother has been dissolved. "It is well settled that a person has no legal duty to provide support for a minor child who is neither his natural nor adopted child and for whose care and support he has not contracted." Hippen v. Hippen, 491 So.2d 1304, 1305 (Fla. 1st DCA 1986), holding limited by, Wade v. Wade, 536 So.2d 1158 (Fla. 1st DCA 1988). See also Albert v. Albert, 415 So.2d 818, 820 (Fla. 2d DCA 1982), rev. denied, 424 So.2d 760 (Fla. 1983); Bostwick v. Bostwick, 346 So.2d 150, 157 (Fla. 1st DCA 1977); Taylor v. Taylor, 279 So.2d 364, 366 (Fla.4th DCA 1973).
Assuming arguendo that the husband had contracted to support the child, he stood in loco parentis at that time. See Hippen, 491 So.2d at 1304. The dissolution of the marriage terminated the in loco parentis relationship that existed between the husband and Ali and, as a result, any support obligation was also terminated. Id.; Taylor, 279 So.2d at 364.
In addition, we find that the wife's reliance on Miller v. Miller, 97 N.J. 154, 478 A.2d 351 (1984) is misplaced. The Miller court concluded that a stepparent could be obligated to support a stepchild on a theory of equitable estoppel if the natural parent/spouse proved representation of support by the nonnatural parent, reliance on that representation and detriment. Miller, *1343 478 A.2d at 358. The custodial parent could prove detriment by showing that the child will suffer future financial detriment as a result of the stepparent's representation or conduct that caused the child to be cut off from their natural parent's financial support. Id. In the present case, the record clearly shows that the husband disagreed with the wife's decision to allow her former husband to stop making child support payments. Therefore, there can be no detrimental reliance. For these reasons, the trial court's refusal to award support for Ali was correct and is affirmed.
Finally, we find that the trial court erred in failing to require the husband to pay all of the wife's attorney's fees and costs. Attorney's fees should be paid by the party who has a superior financial ability to pay. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Martinez-Cid v. Martinez-Cid, 559 So.2d 1177 (Fla.3d DCA 1990); Kuse v. Kuse, 533 So.2d 828 (Fla.3d DCA 1988); Henning v. Henning, 507 So.2d 164 (Fla. 3d DCA 1987). The wife has no immediate earning ability; the husband, however, is employed and has the present superior financial ability to pay.
Affirmed in part, reversed in part and remanded with directions.

ON MOTION FOR REHEARING OR CLARIFICATION
PER CURIAM.
We clarify that the award of attorney's fees to the wife is to be a reasonable amount, to be determined by the trial court. See Conner v. Conner, 439 So.2d 887 (Fla. 1983); Henning v. Henning, 507 So.2d 164, 165 (Fla.3d DCA 1987). In all other respects the motion for rehearing is denied.