GODERICH, Judge.
Leonel Ferradaz, the putative father, appeals from a portion of the final judgment directing him to submit to DNA paternity blood testing. We affirm.
Paula Ortiz and Nardo Sevilla were married on January 15, 1980, in Managua, Nicaragua. The couple adopted a little boy, J.C.S., who was born on October 16, 1988. In November 1988, Paula Ortiz came to Florida to work, and in January 1992, Nardo Sevilla followed her with their son. On December 12, 1992, Paula Ortiz gave birth to a daughter, L.S. Nardo Sevil-la was listed as L.S.’s father on her birth certificate.
In 1995, Paula Ortiz filed a paternity action against Leonel Ferradaz alleging that he was L.S.’s biological father. The trial court appointed a Guardian Ad Litem who conducted an investigation and recommended that a DNA paternity blood test would not be in L.S.’s best interests. That action was later dismissed.
In April 1997, Paula Ortiz filed a petition for dissolution of marriage. In March 1998, the petition was amended to add Leonel Ferradaz as an additional respondent on the basis that he was L.S.’s putative father. Leonel Ferradaz filed an answer denying the allegations of the complaint. Leonel Ferradaz also raised three affirmative defenses: 1) that Paula Ortiz and Nardo Sevilla had always stated and maintained to others that Nardo Sev- *868 ilia was L.S.’s natural father as confirmed by L.S.’s birth certificate; 2) that L.S. was born during the marriage of Paula Ortiz and Nardo Sevilla, that Nardo Sevil-la is the only father that L.S. has ever known, and that it would be in L.S.’s best interests to continue her present relationship with her mother and father without a determination of paternity; and 3) that Paula Ortiz had previously instituted a paternity action wherein the Guardian Ad Litem determined that it would not be in L.S.’s best interests for Leonel Ferradaz to be declared her biological father.
On May 14, 1998, the trial court appointed the same Guardian Ad Litem that had served in the prior case. In November 1998, the Guardian Ad Litem filed her report. In the report, the Guardian Ad Litem indicated that Leonel Ferradaz continues to deny that he is L.S.’s biological father and that if he was found to be her biological father, he would not want any contact with her whatsoever. On the other hand, the Guardian Ad Litem explained that Nardo Sevilla wants to have visitation with his son, J.C.S., and that if he is required to visit with both children, J.C.S. and L.S., he will do so and will treat both of them equally. The Guardian Ad Litem further observed that J.C.S. and L.S. have a good sibling relationship and that neither child wants to be separated from the other.
In her conclusions, the Guardian Ad Li-tem stated:
it would be in both children’s best interests to continue to foster a father-daughter relationship between [L.S.] and Sevilla, who, despite his problems with Ortiz, seems to genuinely care for the child. It is doubtful that [L.S.] would even under the best of circumstances, ever be able to enjoy such a relationship with Ferradaz, even if he were determined to be her biological father. Ferradaz continues to show no interest whatsoever in L.S., and a determination of paternity is not likely to change that fact.
At this point in time, a legal declaration that Ferradaz is [L.S.’s] biological father would not change the status quo much in this family....
Moreover, it would not be contrary to [L.S.’s] best interests, at this point, for a DNA blood test for paternity to be conducted, to put to rest the issue of her paternity once and for all. While it is in [L.S.’s] best interests that she maintain her legitimate status, it is also in her best interests that she be provided with support. The stigma of illegitimacy would be outweighed by [L.S.’s] need for continued support, since under current case law, this Court may find that Sevil-la has no legal duty to provide support for a child born during the marriage who is not his biological child.
After a bench trial, on April 28, 1999, the trial court entered a final judgment, in accordance with the Guardian Ad Litem’s recommendations, awarding Paula Ortiz primary residential custody of J.C.S. and L.S., granting Sevilla liberal visitation with both children, and lastly ordering all of the parties to submit to DNA testing to determine L.S.’s paternity. The trial court reserved jurisdiction on the issue of paternity and child support.
Leonel Ferradaz appeals from the portion of the final judgment directing him to submit to DNA paternity blood testing. Leonel Ferradaz contends that the trial court erred by directing him to submit to DNA paternity blood testing because it is in L.S.’s best interests to maintain her legitimate status. Although we agree that it is in L.S.’s best interests to maintain her legitimate status, we conclude that her legitimate status will remain unaffected by the paternity test because she was born during the valid marriage of Paula Ortiz and Nardo Sevilla. See Daniel v. Daniel, 695 So.2d 1253, 1254 (Fla.1997)(holding that a child remains legitimate as long as he or she was born during a valid marriage), approving 681 So.2d 849 (Fla. 2d DCA 1996); see also, Judge R. Thomas Corbin & Rana Holz, *869 Distinguishing Legitimacy from, Paternity, 73 Fla. B.J. 57 (Jan.1999). Further, because “a person has no legal duty to provide support for a minor child who is neither his natural nor his adoptive child and for whose care and support he has not contracted,” Daniel, 695 So.2d at 1254 (quoting Albert v. Albert, 415 So.2d 818, 820 (Fla. 2d DCA 1982)); see also Portuondo v. Portuondo, 570 So.2d 1338 (Fla. 3d DCA 1990); Swain v. Swain, 567 So.2d 1058 (Fla. 5th DCA 1990); Bostwick v. Bostwick, 346 So.2d 150 (Fla. 1st DCA 1977); Taylor v. Taylor, 279 So.2d 364 (Fla. 4th DCA 1973), it was wholly appropriate, and definitely in L.S.’s best interests for the trial court to order scientific testing to determine paternity and responsibility for support.
Affirmed.