IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2008 Session

## FRANCES RODRIGUEZ v. CHARLES G. PRICE

Direct Appeal from the Chancery Court for Blount County
No. 2006-130    Telford E. Forgety, Jr., Chancellor

No. E2007-02178-COA-R3-CV  - FILED OCTOBER 6, 2008

This is an appeal from a Final Judgment issued by the Chancellor in respect to a Petition for Registration and Modification of Foreign Decree in the Chancery Court of Blount County, Tennessee. The Trial Court ordered the registration of the foreign Judgment, but denied the request for modification. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

W. Andrew Fox, Knoxville, Tennessee, for appellant.

Craig L. Garrett, Maryville, Tennessee, for appellee.

## OPINION

### Background

Appellant Frances Rodriguez and appellee Charles G. Price were divorced on May 26, 1998. The Final Judgment of Dissolution of Marriage was entered by the Family Division of the Circuit Court of the Eighteenth Judicial District for Brevard County, Florida. In this action, appellant petitioned the Chancery Court to register the Florida court's Final Judgment and modify the child support order on the grounds that there was a significant variance pursuant to the Uniform Family Support Act, Tenn. Code Ann. § 36-5-2001 *et seq*. Appellant alleged that although the original jurisdiction in Florida was appropriate at the time of the divorce, neither the child, Aaron

T. Price, nor the parties to the divorce presently live in Florida. Appellant and Aaron reside in South Carolina and Price resides in Blount County, Tennessee.

Appellee filed an Answer and Counter-Petition, and conceded the Judgment of Divorce could be made a judgment of the Tennessee court pursuant to Tennessee law, but denied the Trial Court could modify the prior order of support because Aaron Price was not his biological child and he owed no legal duty of support for Aaron Price. He further averred that any obligation for support of Aaron was contractual in nature as set forth in the Marital Settlement Agreement, and stated that he had agreed to provide limited support in a set amount for Aaron Price, appellant's natural child, in exchange for appellant's waiver of any rights she might have to his military retirement benefits. Appellee averred that he had faithfully provided $400.00 a month for Aaron Price as set forth in the Marital Settlement Agreement, and the Final Judgment of Dissolution of Marriage both stated that Aaron was not the biological child of Price.

## The Trial

The matter came on for trial August 7, 2007, and the Trial Court, after hearing argument from counsel and the testimony of the parties, ordered the Florida Judgment to be registered but denied appellant's Petition to modify the child support for Aaron.

The Court made the following findings of fact and conclusions of law at the conclusion of the hearing:

1.      There is no question that Aaron Price is not the biological child of Mr. Price.

2.      The child support agreement contained in the agreement between the parties and in the Final Judgment of Divorce was not child support in the classic sense because Mr. Price is not the father of Aaron.

3.      The obligation of support for Aaron Mr. Price undertook of $400.00 a month was by contract and not law. Neither the contract or the Final Judgment contain any provision that the support obligation was modifiable. The support obligation was in consideration for Ms. Rodriguez's agreement not to make any claim against Mr. Price's military retirement benefits.

4.      The support obligation which Mr. Price contractually undertook is not modifiable by the Court.

The Final Judgment entered reflects the Trial Court's holdings:

1.      Petitioner is hereby allowed to register the foreign Florida decree in the event the same ever needs to be enforced" and was subject to be registered but was not subject to be modified as it relates to child support for the minor child,

Aaron T. Price, and that the same was a non-modifiable contractual obligation.

2.       Said foreign decree is not subject to modification as it relates to the child support obligations relative to Aaron T. Price inasmuch it is undisputed that the Respondent, Charles G. Price, is not the father of Aaron T. Price and the child support obligation set forth in said decree is a contractual obligation not subject to modification.

Appellant admitted to appellee that Aaron is not his son. She claims she did not know the full name of Aaron's biological father and she had never tried to find him. Appellant testified that Aaron called appellee "Dad" during the marriage. Between the time of Aaron's birth, January 5, 1993, and the parties separation, appellant lived with appellee for approximately one to one and a half years. Appellee served twenty-one years in the Air Force, from 1980 to 2001, and retired as a master sergeant and currently receives military retirement benefits. Aaron is listed as a dependent on his military health insurance.

The Marital Settlement Agreement specifically states that "[b]oth parties intend this Agreement to reflect a complete and final Agreement between them as to alimony, child custody, child support, visitation, property and financial rights, in order that such rights and relations might be finally fixed and determined for all time. The pertinent parts of the Agreement regarding child custody and support are as follows:

10.      SHARED PARENTAL RESPONSIBILITY. The parties shall have shared parental responsibility for the children. However, Mother shall be the primary residential parent for AARON PRICE and Father shall be the primary residential parent for ALEX PRICE. The parties shall retain full parental responsibility with respect to the children, and shall confer in good faith with a view towards adopting a harmonious attitude in matters such as medical and dental care, education, religious training and the other major aspects of the children's growth and development.

Paragraph 11 of the Agreement provides in detail the terms regarding visitation between Rodriguez and Alex, but does not address specifics regarding visitation between appellee and Aaron. Paragraphs 12 and 14 provide for child support and the waiver by appellant of any rights to appellee's military retirement benefits as follows:

12.      CHILD SUPPORT. The Husband shall pay directly to the Wife by allotment from the Armed Forces, as and for the support of AARON, the amount of $400.00 per month commencing on the 1st day of the month following entry of a final judgment, and continuing on the 1st day of each month thereafter. Child support shall continue as to Aaron until he attains the age of 18 years, marries, dies, enters the armed forces, becomes self-supporting, or is

otherwise emancipated. . . .

* * * *

14. WAIVER OF HUSBAND'S MILITARY RETIRED PAY. The Wife waives any right she may have to a portion of the Husband's military retired pay should he be entitled to said pay when he leaves the armed forces. In consideration, should the Husband ever disavow his support for Aaron or fail to make child support payments, the Wife shall have the right to reopen her claim for a portion of Husband's military retired pay.

Paragraph 20 of the Agreement states:

20. TOTAL AGREEMENT. Each of the parties understands that this Agreement constitutes the entire contract between them, superseding any prior understanding or Agreement between them. No modification or waiver by the parties of any of the terms herein shall be valid unless executed in writing signed by both of them.

Appellee testified that at the time he signed the agreement he believed that appellant had a claim to a portion of his military retirement benefits, and he agreed to pay $400.00 a month for Aaron and in return appellant agreed to waive all claims she had to the retirement benefits. Appellee said he planned to maintain a relationship with Aaron, but appellant would not allow him to have any relationship with Aaron after the divorce. Appellee said he had seen Aaron on only one occasion since the divorce at the wedding of Aaron's half-brother Alex in 2006, and Aaron has never visited appellee's home. He has had no involvement in decisions regarding Aaron's upbringing or education.

The issues on appeal are summarized as follows:

A. Whether the Trial Court erred when it refused to modify the child support obligation imposed by both the marital settlement agreement and the final judgment of dissolution of marriage based on a finding that the obligation was contractual?

B. Whether the Trial Court had jurisdiction to modify the child support obligation under the uniform interstate family support act, Tenn. Code Ann. § 36-5-2001 *et seq.*?

C. Whether the child support obligation is eligible for modification under the Tennessee child support guidelines?

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the

-4-

record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13 (d); *Keyt v. Keyt,* 244 S.W.3d 321, 327 (Tenn.2007); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005).

The filing of the appellant's Petition in the Tennessee Court of Blount County, Tennessee to register the Florida court's Final Decree was appropriate and the Trial Court had subject matter jurisdiction to consider the matter pursuant to the Uniform Interstate Family Support Act (UIFSA), Tenn. Code Ann. § 36-5-2001 *et seq.*

The UIFSA controls the establishment, enforcement, or modification of support orders across state lines by providing a mechanism by which support orders from other states can be registered and enforced in Tennessee when the obligor parent lives in Tennessee. *Torrico v. Smithson,* No. M2004-01924-COA-R3-JV, 2006 WL 334032 at * 3 (Tenn. Ct. App. Feb. 13, 2006). Under UIFSA, a state that issues a support order has continuing exclusive jurisdiction over that order and no other state may modify that order as long as the issuing state has continuing exclusive jurisdiction. Here, the issuing state was Florida, but it lost continuing exclusive jurisdiction, because neither appellee, appellant, nor the child are residents of that state. Tenn. Code Ann. § 36-5-2205(a)(1).

Accordingly, the Trial Court had subject matter jurisdiction to modify the support order issued by Florida when all the elements of Tenn. Code Ann. §36-5-2611(a) are met. *See, LeTellier v. LeTellier,* 40 S.W.3d 490, 497 (Tenn. 2001).

The substantive law of Tennessee regarding the obligation of child support and modification of child support is applicable to this case. *See Pickern v. Pickern*, No. E2004-02038-COA-R3-CV, 2005 WL 711964 at * 1 (Tenn. Ct. App. Mar. 29, 2005); *State ex rel. Schleigh v. Schleigh*, No. E-2002-1237-COA-R3-CV, 2002 WL 31421665 (Tenn. Ct. App. Oct. 29, 2002). The Agreement between the parties contains a choice of law clause that provides that "all matters affecting the interpretation and enforcement of this Agreement shall be construed and interpreted pursuant to the laws of the state of Florida. Thus, Florida law governs our interpretation of the Agreement. *See Credit General Ins. Co. v. Insurance Service Group, Inc,* No. E2007-00033-COA-R3-CV, 2007 WL 2198475 at * 2 (Tenn. Ct. App. Jul. 31, 2007) (citing *Goodwin Bros. Leasing, Inc. v. H & B, Inc.,* 597 S.W.2d 303, 306 (Tenn.1980))(As a rule, Tennessee courts will honor a contractual choice of law provision). The Trial Court held the child support agreement in the divorce judgment was pursuant to the Agreement entered into by the parties and was not traditional child support "within the meaning of the law such as to continue to be modified thereafter." The Trial Court also found that as the Agreement contained no provisions for modification of the support agreement, the set amount of $400.00 a month could not be modified by the Court. Further, the Court found the support obligation was in consideration for appellant's agreement not to make any claim against the appellee's military retirement benefits, and the Court also rejected appellant's

argument that appellee was required to support the child under a theory of in loco parentis.

Appellant argues that the Agreement established an in loco parentis relationship with the child. What appellant does not acknowledge is that the appellee never exercised any of the "rights" the agreement granted him as to the child because appellee would not allow him to have any relationship with the child after the divorce.[1]

Appellant relies on the Florida case of *Taylor v. Taylor*, 279 So. 2d 364, 366 (Fla. DCA, 1973) to support her contention that Florida common law recognizes the concept that an in loco parentis relationship can be extended or created by contract. The holding in *Taylor* that "a person has no legal duty to provide support for a minor child who is neither his natural nor his adopted child and for whose care and support he has not contracted" is a well settled rule of Florida law. *See Daniel v. Daniel,* 695 So.2d 1253, 1254 (Fla.1997); *Albert v. Albert,* 415 So.2d 818, 820 (Fla. 2d DCA 1982); *Portuondo v. Portuondo,* 570 So.2d 1338, 1342 (Fla. 3d DCA 1990); *Swain v. Swain,* 567 So.2d 1058 (Fla. 5th DCA 1990); *Ferradaz v. Ortiz*, 754 So. 2d 867, 869 (Fla. 3d DCA 2000); *Bostwick v. Bostwick,* 346 So.2d 150 (Fla. 1st DCA 1977). None of these cases following the *Taylor* holding concerned a situation where a non-parent had contractually assumed the obligation of support of a child and none involved a contract that bestowed the status of in loco parentis on an individual. All of these cases that found in loco parentis also found that the relationship terminated at the dissolution of the marriage.

In relying on *Taylor*, appellant misconstrues the meaning of the language in *Taylor*. *Taylor* states that a person who stands in loco parentis to a child has a legal duty to care for and support the child but any legal duty of support based on in loco parentis status, under the facts of the *Taylor* case, would have been terminated upon the divorce of the parties. Moreover, Taylor does not hold that a non-parent who contracts to take on the care and support of a child, as appellee did, acquires in loco parentis status which then extends the support obligations by operation of law beyond the support terms of the contract. Appellant cites no case that so holds. Appellant's brief argues that both Florida and Tennessee law support her contention that common law holds in loco parentis can be extended be contract. She does not cite any authority from these states to support this statement, and we cannot locate any.[2]

---

[1] Appellee testified on this issue, and appellant did not contest his statement. It is uncontroverted that appellee did not have a relationship with the child after the divorce.

[2] Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed waived and will not be considered on appeal. *Volunteer Concrete Walls, LLC v. Community Trust & Banking Co.,* No. E2006-006020COA-R3-CV, 2006 WL 3497894 at *4 (Tenn. Ct. App. Dec. 4, 2006), *see also* Tenn. R. App. P. 27(a)(7)(b).

Appellant relies on *Duffy v. Duffy*, 438 S.E.2d 445 (N.C. App. 1994). The North Carolina Court held that based on a North Carolina statute, husband, by signing the Separation Agreement in which he agreed to pay child support for the child, voluntarily and in writing extended his status of in loco parentis post-divorce. *Id.* at 385. The *Duffy* Court found that since the Separation Agreement was incorporated into the judgment of divorce, the Trial Court was not bound by the amount of support the parties had agreed upon, but was free to modify the amount of child support in the event of changed circumstances. *Id.* at 448.[3] The *Duffy* Court concluded that in the event the needs of the child exceeded the ability of the natural parents to meet those needs, then and only then would the husband be secondarily responsible for the deficiency. *Id.* at 449.

Here, the Chancellor correctly determined that the reasoning of *Duffy* is inapplicable to this case as Tennessee does not have a statute that requires a person or entity that stands in loco parentis to bear secondary or, for that matter, any liability for the support of a child. Moreover, as appellee pointed out in his argument, the result in *Duffy* is the exact opposite of what appellant seeks in this case. In *Duffy* the case was remanded for a determination of child support to be assessed to both the natural parents of the child who bore primary responsibility for support. A support obligation would only be assigned secondarily to Mr. Duffy in the event both natural parents could not meet the child's needs. The ultimate question before us is whether the Agreement created an in loco parentis relationship between Aaron and the appellee, post-divorce. A marital settlement agreement entered and modified by the Court is subject to interpretation as a matter of law like any other contract, thus the Court's review is *de novo*. *Hobus v. Crandall*, 972 So.2d 867, 869 (Fla. 2nd DCA. 2007)(citing *Kenyon v. Kenyon,* 496 So.2d 839 (Fla. 2d DCA 1986); *Ballantyne v. Ballantyne,* 666 So.2d 957 (Fla. 1st DCA 1996)). Courts may not interpret a marital settlement agreement to include terms that were not plainly stated in the agreement. *Robinson v. Robinson,* 788 So.2d 1092. 1094 (Fla. 4th DCA 2001).

The Agreement sets forth clearly in the first paragraph that appellee is not the child's natural father, nor does it state anything to the effect that although appellee is not the child's natural father his intent is to remain in loco parentis or "as a father", or a "legal father" or a "psychological father" to the child. [4] Since courts are not to interpret a marital settlement agreement to include terms that were not plainly stated in the agreement, we conclude the Agreement did not create or extend an in loco parentis relationship. The Agreement does provide that appellee will pay support in the amount of $400.00 a month, and also states that appellant waives any right she may have to a portion of Mr. Price's military retirement benefits. This is tied to appellee's agreement to pay $400.00 a month. The Agreement statement that appellant can reopen a claim for a portion of the

---

[3] This is not the law in Tennessee. *Penland v. Penland,* 521 S.W.2d 222 (Tenn. 1975)The provisions of a marital dissolution agreement that go beyond the scope of legal or statutory duty for support remain contractual even if incorporated into the final judgment. *Penland* at 224.

[4] These are terms various courts have used to describe a person in the appellant's position as to the child.

retirement benefits as a consequence of appellee's disavowal of his support obligation for the child is significant for two reasons. It demonstrates that the $400.00 a month support obligation was given in consideration of the waiver of appellant's rights to the retirement benefits. More importantly, this clause demonstrates that the parties agreed that appellee had the right to disclaim the support obligation and that should he exercise that right, appellant's remedy would be to bring an action to recover part of the military retirement benefits. If the Agreement was intended to create or extend the in loco parentis relationship, this clause would not make sense. If the child support obligation arose as a matter of law because of the in loco parentis status, appellee would have no right to disavow the obligation and if he failed to make the payments that he was obliged to make the remedy would be for appellant to bring him into court in a contempt proceeding. The foregoing indicates that the child support obligation is purely contractual, another provision of the Agreement demonstrates the child support obligation is a matter of contract. In sum, under Florida law, child support obligations arise by statute, by contract or because of an in loco parentis relationship. Appellant's position that the Agreement gave appellee in loco parentis status post-divorce causing a child support obligation to arise as a matter of law, is not consistent with the unambiguous terms of the Agreement and the actions of the parties. The child support obligation of $400.00 a month is contractual and not modifiable by the Court under the Tennessee Child Support guidelines.

Accordingly, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Frances Rodriguez.

_____
HERSCHEL PICKENS FRANKS, P.J.