845 So.2d 230 (2003)
Michael Lee MILLS, Appellant,
v.
Pegey MILLS, Appellee.
Nos. 3D01-1355, 3D02-733.
District Court of Appeal of Florida, Third District.
April 9, 2003.
Barranco, Kircher & Vogelsang; Cynthia L. Greene, for appellant.
Bette E. Quiat; Jay M. Levy, for appellee.
Before SCHWARTZ, C.J., and LEVY and RAMIREZ, JJ.
PER CURIAM.
This is a consolidated appeal and cross-appeal from a Final Judgment entered in a dissolution of marriage action. The Husband appeals the characterization of certain assets; the Wife appeals the lower court's decision that the couple's Prenuptial Agreement controlled. We find that the lower court erred in finding that the Husband's business was a marital asset subject to equitable distribution. Thus, we reverse and remand for a new trial on the issue of alimony and equitable distribution.
The record reflects that at the time of the Final Judgment, the Husband was 43 years old, and the Wife was 42 years old. The parties married in 1984, and the Wife entered the marriage with a four-year-old child from a prior marriage. During the *231 marriage, the Husband paid for the Wife to attend school and to earn a degree in nursing. At the time of the proceedings below, the Wife was employed as a nurse, worked three days per week, and earned approximately $50,000 per year. The trial court concluded that the Husband earned a net income of $4,166 per month, and the Wife earned a net income of $3,188 per month. At the time of the Final Judgment entered in May, 2001, the Wife and daughter lived in the marital home, owned by the Husband. The Husband lived with his grandmother.
Prior to the parties' marriage, the Husband and the Wife executed a Prenuptial Agreement ("the Agreement"). During the dissolution proceedings below, the Wife sought to set aside the Agreement, alleging that it was invalid and unenforceable because it was procured through duress. The Agreement provided, in pertinent part, that if the parties' marriage was dissolved, each party was to receive: (1) all property owned by him or her prior to the marriage; (2) one-half of all property acquired by purchase after the marriage; (3) all property acquired by him or her during the marriage by gift from a relative (or from a person who was a friend of that party prior to the marriage); and (4) one-half of all gifts to either party from new friends made after the parties married. The attorney who prepared the Agreement also prepared a schedule of assets and liabilities that was attached to the original Agreement. The schedule listed no liabilities on behalf of the Husband. With regard to assets, the Agreement indicated that the Husband owned one-half of the rights to ownership in the 770 Lake Road house, as well as the furniture in the house. There were no values listed in the Agreement. A separate hearing was held on the validity of the Agreement. The trial court found that the Wife's testimony was inconsistent, evasive, and without corroboration. The trial court determined that the Agreement was valid and binding and denied the Wife's request that the Agreement be set aside.
The Husband's grandmother, Kathryn Mills, owns and operates the Mills family business, RonLee, Inc., a quarrying and road construction business. Prior to the marriage, the Husband was employed by RonLee, Inc., and he continued to work for RonLee during the marriage. The Husband was on the company's payroll and received a salary from RonLee, Inc.
In 1985, Kathryn opened a second company, RonLee Construction, Inc. Kathryn owned 100% of RonLee Construction and all 500 shares of the corporation were issued to her. In November, 1986, Kathryn gifted all 500 shares of her stock in RonLee Construction to the Husband. The corporate books indicate that Kathryn gifted her shares to the Husband. The certified public accountant, who prepared the company's tax returns at the time, testified that the stock was a gift from Kathryn to the Husband. The Husband testified that he received the shares as a gift from Kathryn. In 1987, Kathryn Mills gifted $281,000 to the Husband by way of three separate payments of $11,000, $20,000 and $250,000. Kathryn filed a gift tax return regarding these gifts to the Husband. The Husband deposited all of the funds into RonLee Construction, Inc., which was by then, his solely-owned company. RonLee Construction, Inc. then purchased a rock pit for $600,000 from Kathryn's company, RonLee, Inc. RonLee Construction borrowed all $600,000 needed for the purchase of the rock pit and then prepaid $200,000 of the note (using the funds Kathryn gifted to the Husband), which reduced the balance due on the note to $400,000.
*232 In February, 1998, RonLee Construction sold the rock pit for $326,000 and RonLee, Inc. released its mortgage in order to permit the sale to go forward. RonLee, Inc. did not release the note underlying the mortgage and required that RonLee Construction issue a new note to RonLee, Inc. for the $400,000. This new note was dated February, 1998, the same date as the sale of the rock pit.
Beginning in 1990 and through at least 1995, the financial statements prepared for RonLee Construction reflected that the $400,000 due from RonLee Construction to RonLee, Inc. had been satisfied. There was no record or documentation that the note had been paid. The auditor who prepared the financial statements testified that he had assumed that the debt had been satisfied as a gift from Kathryn, through her company, RonLee, Inc., to the Husband, through his company RonLee Construction, Inc. This debt had not been paid, but the Husband signed representation letters attesting to the accuracy of the financial statements. The Husband admitted that the financial statements were wrong when he saw them because the $400,000 obligation was no longer appearing on the statements. He testified that he needed to work to support his family and without the ability of his company to obtain bonding, the company could not bid for road construction work.
In the Final Judgment, the trial judge concluded that the gift of corporate stock of RonLee Construction, Inc. to the Husband by Kathryn was not a gift because by performing services for his grandmother and her company, the Husband earned an entitlement to have the company given to him by Kathryn. Thus, the Husband's interest in RonLee Construction, Inc. was deemed by the trial judge to be a marital asset. The value of the company was not excluded from distribution by the parties' Prenuptial Agreement. The trial court valued the business at $610,390.00, finding that the company did not owe the $400,000 liability to RonLee, Inc. for the purchase of the rock pit, since Kathryn had filed a satisfaction of the mortgage in December, 1997. The trial court awarded the Wife an equitable distribution of one-half of the value of the company, $305,195.00, payable by the Husband to the Wife in monthly payments of $3,800 per month, plus interest at the statutory rate, secured by an equitable lien against the Husband's non-marital home. The court noted there was a $260,704 mortgage placed on the marital home in January of 2000, that the Husband executed in favor of Kathryn. The lower court found this mortgage invalid and executed for the purpose of preventing the Wife from accessing the home for the purposes of this litigation.
The court found the Wife's annual income to be $50,000 and the Husband's income to be $62,500, and denied permanent periodic alimony on the basis that the parties' income levels were relatively similar. The court found the Wife was entitled to lump sum alimony of $50,000 "in order to establish a comparable household to that of the husband," and found special circumstances justifying such an award, including the fact that the Husband left the marriage with significant non-marital assets whereas the Wife was left with no car, no furniture and no place to live. The $50,000 consisted of $25,000 for a car, $10,000 for real estate/rental down payments, and $15,000 for furniture and appliances. The court made the award, finding a special contribution by the Wife and concluding that had the Husband worked for someone other than the grandmother, he would have likely had retirement funds to share with the Wife. The Husband then appealed, and the Wife cross-appealed.
*233 On appeal, the Husband contends that the stock in RonLee Construction was a gift and that there is no record evidence to support the court's conclusion that the gift was actually payment for services rendered. We agree and reverse on this issue.
Under Section 61.075(5)(b)(2), Florida Statutes (2002), assets acquired by non-interspousal gift, bequest, devise or descent are deemed non-marital assets. Furthermore, three elements must be shown to support a finding of intent to make a gift: (1) donative intent, (2) delivery or possession of the gift, and (3) surrender of dominion and control of the gift. See Eulette v. Merrill Lynch, Pierce, Fenner and Beane, 101 So.2d 603, 605 (Fla. 3d DCA 1958). Thus, a gift is made when a donor, intending to make a gift, delivers the gift to the donee and relinquishes all possession and control of the gift. See Reiner v. Reiner, 400 So.2d 1292, 1293 (Fla. 4th DCA 1981). In the case before us, the record reflects that there was no evidence to support the finding that Husband received the stock in RonLee Construction from Kathryn as compensation for services he performed for RonLee, Inc. and RonLee Construction.
The record reflects that the donor, Kathryn, intended to make a gift of the 500 shares of stock to the donee, the Husband. Kathryn relinquished complete control of the stock. Here, there was no evidence to rebut any of the testimony and evidence presented below regarding Kathryn's gift of stock in RonLee Construction, Inc. to the Husband. The gift was recorded in the records of the 1986 annual meeting of the company's directors, Kathryn testified that she gifted the stock to the Husband, the Husband testified that he received the shares as a gift from Kathryn, and the certified public accountant who prepared the company's tax returns at the time testified that the stock was a gift from Kathryn to the Husband. Certainly, this Court is aware that there are circumstances where a gift is disguised, however, there was no evidence presented below that this was the case here.
In sum, there was no evidence presented to indicate that this stock transfer was anything other than a gift. Based on the foregoing, we reverse and remand for reconsideration of the equitable distribution award. Because the lower court considered the equitable distribution award in the denial of permanent alimony, as should be done according to Section 61.08(2)(d), Fla. Stat. (2002), we also remand for a new trial on alimony. We affirm on all other points on appeal and cross-appeal.
Reversed and remanded.