COPE, C.J.
This is an appeal of an amended final judgment of dissolution of marriage entered after remand in Mills v. Mills, 845 So.2d 230 (Fla. 3d DCA 2003). We conclude that there must be further proceedings and remand for that purpose.
I.
We first consider whether the trial court misapprehended the scope of the remand from the prior appeal. We conclude that the prior panel intended for the $50,000 lump sum alimony award to remain intact, and that award should not have been revisited and reduced on remand.
In the original final judgment in this case, the trial court found that the former husband’s business, RonLee Construction, Inc. (“RLC”) was a marital asset. The trial court valued the business at $610,390 and equitably distributed one-half of that value to the former wife ($305,195).
In light of that equitable distribution (among other things), the court denied the award of permanent periodic alimony, but granted $50,000 in lump sum alimony, in the nature of bridge-the-gap alimony, to enable the former wife to obtain housing and transportation. See Borchard v. Borchard, 730 So.2d 748, 753 (Fla. 2d DCA 1999)(“Bridge-the-gap alimony is ... to assist a spouse with any legitimate, identifiable, short-term need.”).
In the first appeal in this case, the former husband challenged the trial court’s finding that RLC was marital property subject to equitable distribution. The pri- or panel concluded that the business was the former husband’s separate property as provided by the parties’ prenuptial agreement. Mills, 845 So.2d at 233. As a result this court reversed the equitable distribution award. Id. The effect was to eliminate the award of $305,195 to the former wife. The panel went on to say, “Because the lower court considered the equitable distribution award in the denial of permanent alimony ... we also remand for a new trial on alimony.” Id. Thus the remand was for reconsideration of the equitable distribution award (excluding the husband’s business), and for reconsideration of the former wife’s request for permanent alimony. Id.
In the original appeal the former husband also challenged the $50,000 award of lump sum alimony. This court’s opinion said, “We affirm on all other points on appeal and cross-appeal.” Id. The “other point[]” on appeal was the former husband’s challenge to the $50,000 lump sum alimony award. Thus the $50,000 award was affirmed on the prior appeal.
On remand, the former husband persuaded the successor judge that this court had reversed the lump sum alimony award, and persuaded the trial court to reduce that award. We acknowledge that the pri- or opinion was not as clear as it could have been about the scope of the remand. The introductory paragraph in the opinion could be read to say that the remand included all alimony issues. Id. at 230. However, the concluding paragraph does *887 set forth with more particularity the issues to be considered, which included equitable distribution and permanent alimony. By affirming on the other issues, the opinion necessarily affirmed the lump sum award.
For the stated reasons we reverse the reduced lump sum alimony award in the amended final judgment and remand with directions to reinstate the $50,000 award.
II.
We also reverse because the successor trial court applied the incorrect legal standard in reaching its conclusions as to permanent periodic alimony in the Amended Final Judgment. The court concluded that it could not look to the former husband’s separate assets as a source of income to pay alimony. The court said:
Although the Former Husband has a substantial non-marital asset (the liquid funds in his corporation) the court finds that it cannot-legally order someone to pay permanent periodic alimony when the only way that they have the ability to pay the permanent alimony is by depleting a non-marital asset on a monthly basis.
This is not a correct statement of the law.
The first question is whether the trial court may consider the former husband’s separate assets as a possible source of funds with which to pay alimony. The answer to that question is yes. Under the alimony statute:
(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, - the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
§ 61.08(2), Fla. Stat. (2002) (emphasis added).
Under paragraph 61.08(2)(d), the court is to consider the non-marital and marital assets of each party, and under paragraph 61.08(2)(g) the court is to consider all sources of income available to either party. Thus, a payor spouse’s non-marital assets are to be considered in determining the “ability to pay” aspect of the alimony equation. See White v. White, 617 So.2d 732 (Fla. 2d DCA 1993)(“Finally, we doubt that the record supports the finding that the husband, a sixty-year-old experienced businessman, lacks the income to pay any alimony. .Even if it does, Mr. White received over $300,000 in marital assets, and has extensive non-marital assets as a result of the prenuptial agreement. . The husband’s income alone is not the test for determining ability to pay alimony”); Green v. Green, 542 So.2d 466, 467 (Fla. 5th DCA 1989)(“[A]lthough these separate assets should not.be considered for purposes of equitable distribution of marital assets, they [are] relevant to the issue of [husband’s] ability to pay.”); see also Canakaris v. Canakaris, 382 So.2d *888 1197, 1201-02 (Fla.1980) (A spouse’s ability to pay may be determined not only from net income, but also net worth, past earnings, and the value of the parties’ capital assets.)
The trial court expressed concern about depleting a non-marital asset, the former husband’s business, on a monthly basis. While we share that concern, this case is unusual because the original judgment found the former husband to be voluntarily underemployed. At the time of the hearing on remand, the former husband testified that he had not succeeded in obtaining new contracts during the pendency of the divorce proceedings, was not doing business through his company, and was simply withdrawing funds from the business for his own living expenses. The business had over $150,000 in liquid assets.
The judgment on remand indicates that the liabilities of the husband’s business, RLC, exceeded the assets. This conclusion was in error. The former husband maintained that RLC owed $400,000 to the former husband’s grandmother or her company RonLee, Inc., as well as $129,000 in interest thereon. In the original final judgment the trial court found this $400,000 liability to have no economic substance, and in addition, a satisfaction of the indebtedness had been recorded. The original judgment rejected the former husband’s claim that this money was still due and owing.[1]
In the proceedings on remand, the trial court misinterpreted this court’s opinion as having reversed the original judgment on this point. Respectfully, this court did not disturb the determination in the original judgment that the alleged $400,000 liability must be disregarded. See Mills, 845 So.2d at 232. It follows that the accrued interest of $129,000 must be disregarded as well.
The judgment on remand also refers to other indebtedness of the former husband to the former husband’s grandmother. In the original judgment, the court found invalid a mortgage of $260,704 the former husband placed on the marital home in favor of the grandmother, determining that it has been “executed for the purpose of preventing the Wife from accessing the home for the purposes of this litigation.” Id. On the prior appeal, this court did not disturb that finding. Id.
Upon eliminating the $400,000, $129,000, and $260,704, it is clear that the former husband has significant net worth. In the original judgment he was found to be voluntarily underemployed, a situation persisting at the time of the hearing on remand. As the only stated reason for denial of permanent alimony was lack of ability to pay, we conclude that there must be a new hearing on permanent alimony. On remand, the trial court will also need to make a determination as to whether the former wife has a need for permanent alimony. It appears that the successor trial court judge believed the issue of ability to pay was dispositive, and *889 did not make any findings on the question of need. As is made clear by the foregoing, findings will need to be made on both need and ability to pay. See Canakaris, 382 So.2d at 1201-02; § 61.08(2), Fla. Stat.
III.
We also reverse the order which denied most of the former wife’s trial court attorney’s fees. The successor trial court gave two reasons for denying the former wife the bulk of her trial court fees: 1) the former wife took an unsupportable position with regard to the parties’ pre-nuptial agreement; and 2) that the former wife alleged that the $400,000 note to the former husband’s grandmother was not valid “and the Third District found that it was.”
We do not quarrel with the trial court’s exclusion of fees incurred contesting the pre-nuptial agreement. See Rosen v. Rosen, 696 So.2d 697, 699 (Fla.1997). However, the trial court also excluded time spent challenging the validity of the husband’s company’s indebtedness to the former husband’s grandmother or the grandmother’s business, RonLee, Inc. The trial court concluded that this court rejected the former wife’s position on the validity of that debt. As stated earlier, that reading of this court’s previous opinion was in error. In the prior opinion, the panel accepted the trial court’s valuation of RLC of $610,000 which was arrived at upon the determination that the $400,000 was not a legitimate debt of RLC. Mills, 845 So.2d at 232. It follows that elimination of those hours was erroneous. Similarly, the reduction of the award because of a perceived inability of the former husband to pay was also erroneous. We reverse with directions to award the former wife her trial court fees except those attributable to contesting the pre-nuptial agreement.[2]
We reverse the Amended Final Judgment and remand to the trial court for further proceedings consistent herewith. We affirm on the cross-appeal.

. This court's prior opinion set forth as background facts the respective positions of the parties regarding the valuation of RLC, including the former husband’s position that the $400,000 indebtedness had been omitted • from RLC's financial statements through error. Mills, 845 So.2d at 231-32. The predecessor judge rejected the former husband's testimony, ruling that the $400,000 was not a legitimate debt of RLC and also that a satisfaction had been recorded. This court stated, "The trial court valued the business at $610,390.00, finding that the company did not owe the $400,000 liability to RonLee, Inc. for the purchase of the rock pit, since Kathryn had filed a satisfaction of mortgage in December, 1997.” Id. This court did not overturn the original trial court's valuation. Instead this court reversed on the entirely distinct question of whether the stock of RLC qualified as a non-marital asset under the parties' pre-nuptial agreement. Id. at 233.

. We also strike that portion of the order on appeal which states that the predecessor judge found the former wife committed perjury. The predecessor judge made no such finding.