686 So.2d 805 (1997)
Elena WILLIAMS, Appellant,
v.
Neil M.J. WILLIAMS, Appellee.
No. 95-4089.
District Court of Appeal of Florida, Fourth District.
January 29, 1997.
*806 David A. Riggs and Ryna E. Mehr of Hunt, Cook, Riggs, Mehr & Miller, P.A., Boca Raton, for appellant.
Curtis L. Witters of Glickman, Witters & Marell, West Palm Beach, for appellee.
PARIENTE, Judge.
On appeal, the wife challenges several aspects of the trial court's final judgment, including the unequal distribution of the marital assets, the partition of the marital home, the failure to award permanent periodic alimony, and the award of the federal income tax dependency exemption to the husband. We affirm on all points, except for the unequal distribution of the marital assets.[1]
The parties were married for nine years. This was the wife's first marriage and the husband's second. At the time of the dissolution hearing, the wife was 41 years old and the husband was 44. The parties had one minor child, born on December 12, 1987. Although the wife was a citizen of Chile and the husband and minor child were citizens of the United Kingdom, the parties were all Florida residents.
Prior to their marriage, the wife resided in Chile, where she had been employed for nine years as a flight attendant for a Chilean airline. Upon her marriage to the husband, the wife terminated her employment and relocated with the husband to Germany. Following a 1989 relocation to South Florida, the wife began working part-time outside the home as a salesperson at a clothing store, earning an average of $5,000 to $6,000 a year. The wife's primary role throughout the marriage, however, was that of homemaker.
The husband was primarily responsible for the family's financial support. Initially, the husband worked as an executive with Exxon Corporation, earning approximately $100,000 per year, plus allowances and incentive bonuses. Just prior to the South Florida relocation, he voluntarily terminated his employment, with a resultant reduction in income, to obtain a change in lifestyle. Once in South Florida, the husband formed a corporation that operated a travel agency. The trial court found the husband's after-tax earning capacity to be $45,000 per year.
In its final judgment, the trial court rejected the wife's claim of entitlement to permanent periodic alimony and awarded her three years of rehabilitative alimony of $1,500 per month "to allow her to bridge the gap between her standard of living enjoyed during her nine year marriage and her single status." The trial court also rejected the wife's request for exclusive use and possession of the marital home and granted the husband's request for its partition. The parties agreed that the wife would be the primary custodial parent for the minor child.
The trial court valued the marital assets at $1,188,133, but then unequally distributed the marital assets by awarding $399,673 to the wife and $788,460 to the husband. The trial court found an additional $319,797 of assets to be the husband's nonmarital assets, bringing the husband's total award of marital and nonmarital assets to $1,108,257. The wife does not attack the award of nonmarital assets to her husband, but claims that the division of marital property was neither equitable nor just.
Central to the trial court's unequal distribution of marital assets and to this appeal was the fact that the husband brought a substantial amount of premarital assets into the marriage. The premarital assets included Shearson and Dreyfus accounts, proceeds from the sale of an Australian house, stock options, and $144,000 out of a $290,000 inheritance from the husband's father. The original value of these assets was $637,000.
*807 In classifying these premarital assets as marital assets, the trial court rejected the testimony of the husband's accountant who attempted to trace the premarital assets to specific acquisitions during the marriage. The trial court specifically found that "[t]he greater weight of the evidence establishes that these assets are inextricably co-mingled with other marital assets rendering them all marital assets."[2]
Not only did the trial court find that the premarital assets were inextricably commingled, but it found that during the course of their marriage, the parties had lived above their means by liquidating part of the husband's premarital assets. Despite these findings, the trial court used the original value of the husband's premarital assets as a reason for unequally distributing the parties' marital assets.
In making its equitable distribution award, the trial court attributed only $551,000 as representing "an accumulation of wealth during the marriage by the active labors of a spouse and ... accumulations solely from marital assets." The trial court arrived at this amount by subtracting $637,000, which represented the original value of the premarital assets, from $1,188,133, the total present value of the marital assets.
Although the trial court stated that one-half of the $551,000, or $275,500, would be awarded to each party as part of his or her total equitable distribution award, the trial court did not specifically divide the existing marital assets in accordance with its findings. Nor could it have made such a division, having previously found that the premarital assets could not be traced to any of the existing marital assets.
It is clear, however, that the trial court awarded the husband a significant percentage of additional assets in an attempt to compensate him for having made the original contribution of premarital assets. The husband, in fact, received an additional allocation of marital assets valued at approximately 80% of the original value of the husband's premarital assets.
The net effect of the trial court's allocation was that the wife received roughly one-third of the total marital assets while the husband received the remaining two-thirds. The trial court explained its unequal distribution of marital assets by stating:
The Court began with the premise that the distribution should be equal.... The Husband has been able due to his premarital assets to support the family above the actual family income by the partial liquidation of his formerly premarital assets.... This has enabled the Husband to work less and spend much more time with the child then [sic] most fathers who have to work constantly. The Wife has contributed to the care and education of the child and performed services as a homemaker. The Mother earned an average of $5,000 to $6,000 a year since 1989, but this money was not relied upon as a source of support for the marriage. The real significant financial support came from the Father. The average family earned income appears to be $50,000 per year and their expenses appear to have averaged approximately $60,000 per year....
[T]he Husband accumulated the key assets before the marriage. His various premarital assets were co-mingled with earnings, interest and dividends earned during the marriage. It would not be equitable and just after a nine year marriage to distribute these assets in an equal distribution.
(Emphasis supplied).
In Robertson v. Robertson, 593 So.2d 491, 493 (Fla.1991), our supreme court explained that section 61.075 creates a statutory form of equitable distribution. See § 61.075, Fla. Stat. (1995). Under the statute, the first task is to divide the parties' combined assets and liabilities into two categories: (1) marital; and (2) nonmarital. Robertson, 593 So.2d at 493; see § 61.075(3). The statute enumerates the assets and liabilities to be included within each of these two categories. Robertson, 593 So.2d at 493; see § 61.075(5).
*808 Interspousal gifts during marriage are deemed marital assets. § 61.075(5)(a)3; Amato v. Amato, 596 So.2d 1243, 1245 (Fla. 4th DCA 1992). When one spouse deposits funds into a joint account where they are commingled with other funds so as to become untraceable, a presumption is created that the spouse made a gift to the other spouse of an undivided one-half interest in the funds. Amato, 596 So.2d at 1244. This presumption may be overcome by a showing that no gift was intended. Id. at 1245; see § 67.075(7).
In Amato, the wife received proceeds as the beneficiary of a life insurance policy. 596 So.2d at 1244. Upon receipt, the proceeds were the wife's exclusive property under subsection 61.075(5)(b)2. Id. at 1245. However, the wife deposited the proceeds into a joint checking account where the proceeds were commingled with joint funds that were regularly drawn on over the years by both parties. Id. at 1244. A presumption was thus created that the wife had made a gift of the proceeds to the husband. Id. at 1245. This court explained that "the commingling made [the proceeds] an interspousal gift, and the property became swept under section 61.075(5)(a)3." Id. The wife "thus ended up with a burden under section 61.075(7) to prove that no gift was intended." 596 So.2d at 1245.
Here, the trial court found that $637,000 of the husband's premarital assets were commingled with the marital assets and became untraceable. Therefore, the premarital assets became swept under subsection 61.075(5)(a)3. Because the husband did not meet his burden of showing that no gift of the premarital assets was intended, the trial court properly categorized these assets as marital assets.
Once marital assets and liabilities have been separated from nonmarital assets and liabilities, the trial court's task is to divide the marital assets and liabilities between the spouses. Robertson, 593 So.2d at 493. In Robertson, our supreme court explained:
Because equitable distribution is premised on the theory of an equal partnership in marriage, the court should begin this task on the premise that each spouse is entitled to receive an equal division. However, the court is directed to distribute the marital assets and liabilities "in such proportions as are equitable" after considering various enumerated factors as well as any other factors "necessary to do equity and justice between the parties." § 61.075(1).
Id. Therefore, the distribution of marital assets will ordinarily be "equal unless some relevant factor justifies disparate treatment, such as the payment of permanent periodic alimony or the performance of extraordinary services over and above the normal marital duties." Romano v. Romano, 632 So.2d 207, 210 (Fla. 4th DCA 1994); see Bobb v. Bobb, 552 So.2d 334, 336 (Fla. 4th DCA 1989).
The fact that an asset is determined to be an interspousal gift and then categorized as a marital asset does not mandate that the asset be split equally where an unequal split is "necessary to do equity and justice between the parties." § 61.075(1)(j). In McMonagle v. McMonagle, 617 So.2d 373 (Fla. 5th DCA 1993), the trial court felt compelled to equally split the marital assets after finding that the husband had intended to make a gift of one-half of his premarital assets to the wife. The trial court observed that an equal split of marital assets was inequitable in that case because, after the equal distribution, the husband's total assets would be cut in half and the wife's assets doubled. Id. at 374.
McMonagle concerned a "short, incompatible marriage (less than two years), entered into by the parties when they were fifty-six years of age and it was (at least) a second marriage for both." Id. "All of the parties' assets had been acquired prior to their marriage. Neither made any substantial contribution to the other's income or assets during the marriage." Id. While the husband placed all his assets in the parties' joint names, the wife was far less generous, having retained the sole interest in her premarital assets. Id.
In reversing the equitable distribution award in McMonagle, Judge Sharp explained that "nothing in either the statute or Robertson requires an equal split of marital assets between the parties. That may be a `good starting point' in some dissolution cases, but it should not end with an `inequitable result' *809 in any case." 617 So.2d at 374 (footnote & citation omitted).
Based on its findings, the trial court here apparently relied on several factors to justify the unequal distribution: the duration of the marriage; the husband's greater annual income during the marriage; and the fact that the husband accumulated the key assets before the marriage and contributed to the family's lifestyle by the liquidation of the husband's premarital assets.
Duration of the marriage is a factor explicitly enumerated in the statute. See § 61.075(1)(c). However, while the duration of this marriage may have been a factor affecting the trial court's decision concerning permanent periodic alimony,[3] the length of this marriage was not so short as to justify an unequal distribution absent other compelling factors. Cf. Ibanez-Vogelsang v. Vogelsang, 601 So.2d 1303 (Fla. 3d DCA 1992) (no abuse of discretion in awarding husband in six-week marriage the parties' $900,000 home, which was husband's premarital property and sole substantial asset).
The parties here were married long enough so that over the years the husband's premarital assets lost their separate identity, becoming inextricably commingled with assets acquired during the marriage as a result of the reciprocal efforts of both parties to the marital partnership. No showing has been made that the duration of the marriage in this case was a "relevant factor justifying disparate treatment" in order to achieve "equity and justice" between the parties. See Robertson; Romano. Therefore, the duration of the marriage should not have been relied on to deviate from an equal distribution of the parties' marital assets pursuant to the initial statutory premise of subsection 61.075(1).
As for the husband's greater earned income during the marriage, subsection 61.075(1)(g) states that factors justifying an unequal distribution include:
[t]he contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of ... the marital assets.
However, we have previously held that where one spouse worked throughout the marriage as a homemaker and mother, the greater contribution of income by the other spouse does not support an unequal division of marital assets without the "requisite showing of some extraordinary services on the part of the spouse receiving the lion's share of the distribution." See Romano, 632 So.2d at 211. Here, the husband has made no showing of extraordinary services over and above the normal marital duties. See id. at 210.
The fact that the husband, who served as the primary wage earner, also made a significant contribution of marital assets does not justify the trial court's disparate treatment of the marital assets. Here, in contrast to McMonagle and Ibanez-Vogelsang, the parties were married for almost nine years and each party made a significant contribution to the marital partnership. The wife performed services as a homemaker. See § 61.075(1)(a). Both parties contributed to the care and education of their child. The husband made a decision to contribute his premarital assets to the marital partnership by inextricably commingling them and using the proceeds to support the family and to purchase the marital assets.
We do not just view the equitable distribution award in isolation; we examine the judgment as a whole in determining whether the trial court abused its discretion. See Hamlet v. Hamlet, 583 So.2d 654, 657 (Fla.1991). The equitable distribution award and alimony award are interrelated. See § 61.075(8). Thus, we also consider that the trial court awarded the wife only three years of rehabilitative alimony, did not award her permanent periodic alimony, did not award her exclusive use and possession of the marital home, and, by agreement, awarded the wife primary physical custody of the parties' minor child.
At the same time, the husband received a substantial amount of nonmarital *810 assets in addition to his share of the marital assets. He also possessed a vastly superior earning capacity as compared to his wife. In view of the judgment as a whole and the absence of any other relevant factor justifying disparate treatment, the trial court's unequal distribution of marital assets greatly favoring the husband was neither equitable nor just.
Affirming the unequal distribution in this case would allow a trial court in every case the discretion to unequally distribute assets solely because the primary wage earner made a premarital contribution, even in the absence of any compelling factors. This case presents no unique circumstances that would render a harsh result necessary to do equity and justice between the parties. While McMonagle and Ibanez-Vogelsang present classic cases of compelling circumstances which might justify an unequal division of marital assets based on one parties' premarital contribution, this case does not.
We do, however, affirm the trial court on all other points raised on appeal. In viewing the judgment as a whole as well as the amount of assets available for equitable distribution, we do not find that the trial court erred in failing to award the wife exclusive use and possession of the marital home. The husband does not object, however, to the wife receiving the marital home as part of her share of the equitable distribution award.
We remand with instructions that the marital assets be distributed equally. On remand, the wife may be awarded the marital home as part of her share of the equitable distribution award. Additional testimony may be taken at the discretion of the trial court on the issue of the tax consequences, if any, of awarding the wife the marital home.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
POLEN, J., and TAYLOR, CAROLE Y., Associate Judge, concur.
NOTES
[1] We do not agree with the husband's assertion that the record provided by the wife is inadequate to allow us to review the points raised by her. See Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908 (Fla.1985).
[2] The trial court was able to trace one IRA which the husband held prior to the marriage. The trial court allocated this one asset as 75% nonmarital and 25% marital.
[3] No abuse of discretion has been found in denying permanent periodic alimony to a spouse in a nine-year marriage where the relevant factors included "the prior self-sufficiency of the wife, the good health and relative young ages of the parties, the other assets and income provided to the wife, the lack of children, and, arguably, the length of the marriage." See Geddes v. Geddes, 530 So.2d 1011, 1016 (Fla. 4th DCA 1988).