I concur with the majority. I write to address Justice Anstead's dissent in which he refers to this Court's "enlightened decision" in Canakaris v. Canakaris, 382 So.2d 1197
(Fla. 1980), as a reason to uphold the trial court's decision in this case. Dissenting op. at 13. Although Canakaris
recognizes the discretion of a trial judge in the difficult decisions often presented in a dissolution case, we also observed in Canakaris that:
 The discretionary power that is exercised by a trial judge is not, however, without limitation, and both appellate and trial judges should recognize the concern which arises from substantial disparities in domestic judgments resulting from basically similar factual circumstances. The appellate courts have not been helpful in this regard. Our decisions and those of the district courts are difficult, if not impossible, to reconcile. The trial court's discretionary power is subject only to the test of reasonableness, but that test requires a determination of whether there is logic and justification for the result. The trial courts' discretionary power was never intended to be exercised in accordance with whim or caprice of the judge nor in an inconsistent manner. Judges dealing with cases essentially alike should reach the same result. Different results reached from substantially the same facts comport with neither logic nor reasonableness.
382 So.2d at 1203 (emphasis supplied).
Nineteen years after Canakaris, I question whether, as a result of Canakaris, trial and appellate decisions provide any more predictability to litigants or to their attorneys when advising clients on probable outcomes. Flexibility in the name of discretion has often led to uncertain outcomes — both of which may be "reasonable." This is not meant as a criticism of any individual judge. Rather, it is a comment on the difficulty, but yet the importance, of predictability for the litigants embroiled in a family law controversy.
The majority opinion in this case assists in ensuring the uniformity and predictability of the legal rules with regard to separately owned assets. The Coca-Cola stock at issue in this case was inherited by the *Page 1180 
wife and remained in her name throughout the marriage. Therefore, under subsection 61.075(5)(b)2, Florida Statutes (1997), the stock was clearly a nonmarital asset because it was an asset "acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets."
The stock retained its separate identity so there was no presumption that an interspousal gift was ever intended pursuant to subsection 61.075(5)(a)3. See Williams v.Williams, 686 So.2d 805, 808 (Fla. 4th DCA 1997). The husband also does not contend, nor did the trial court find, that he is entitled to a portion of the stock based on subsection61.075(5)(a)2, providing that a marital asset includes the "enhancement in value and appreciation of nonmarital assets resulting . . . from the efforts of either party during the marriage." See also Barner v. Barner,716 So.2d 795, 797-98 (Fla. 4th DCA 1998) (no portion of the nonmarital asset became a marital asset where no significant marital labor contributed to the appreciation of the asset over the course of the marriage). The wife does not contest the husband's entitlement to the benefit of the stock that was sold throughout their marriage to fund their luxurious lifestyle or to acquire other jointly held assets. This clearly identifiable stock remained in the wife's name in a safe deposit box.
The question then becomes under what principle of law the separately acquired and vastly appreciated stock would be transformed from a clear nonmarital asset to a marital asset. Under the husband's theory, because of the wife's voluntary act of agreeing to the use of the stock as collateral, the husband would enjoy not only the benefits of what was obtained through the collateralization but further lay claim to the collateral itself. There is no principle of statutory law, case law, or equity that would transform a clearly identifiable nonmarital asset into a marital asset merely because the stock was pledged as a collateral for marital debts. The discretion accorded trial courts under Canakaris should not prevent the recognition of this clearly understood equitable and predictable principle of law.
LEWIS, J., concurs.