ROTHENBERG, J.
 

 Jose Vigo (“Husband”) appeals from the amended final judgment dissolving his marriage to Maria Do Graca Vigo (‘Wife”), and from the amended order granting the Wife’s motion for relief from admissions.
 
 [1]
 
 We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 

 I. Facts
 

 Prior to the marriage, the Husband was diagnosed with a benign brain tumor, and
 
 *621
 
 began receiving disability benefits. In 1995, he underwent surgery for the tumor, and thereafter, he filed a medical malpractice action against the hospital. When the parties met in December 1997, the Husband was residing in New York, and the Wife was residing in Florida. Approximately one month later, the Wife moved to New York and began to reside with the Husband, and in December 1998, the parties married in Florida, and returned to New York. In July 2002, the Husband’s medical malpractice action settled, and he received an initial payment of $3 million, and began receiving monthly payments of $32,000, which will terminate in 2012. The settlement payments and disability benefits were deposited into accounts titled solely in the Husband’s name, and have not been commingled with any marital funds.
 

 In February 2003, the Husband purchased a condominium in Miami Beach with monies from one of his separate accounts, and shortly thereafter, the parties moved to Miami Beach, and the condominium became the parties’ principal residence. The Husband paid all expenses related to the condominium with funds from his separate accounts.
 

 On July 12, 2006, the Husband filed a petition for dissolution of marriage. Thereafter, the Wife answered the Husband’s petition and filed a counter-petition and amended counter-petition for dissolution of marriage, seeking, in part, a distribution of all marital assets and an award of alimony.
 

 At the final hearing, the Wife argued, in part, that she was entitled to an award of alimony, and that the condominium was a marital asset, subject to equitable distribution, because the Husband intended to gift a one-half interest in the condominium to her. The trial court heard testimony from several witness, including the parties, a vocational evaluation specialist hired by the Husband, a rehabilitation consultant hired by the Wife, and one of the Wife’s physicians. Numerous exhibits, including reports from the Wife’s physicians, the parties’ financial affidavits, documentation as to the Husband’s finances, and the reports issued by the vocational evaluation specialist and rehabilitation consultant, were admitted into evidence.
 

 In April 2008, the trial court entered its amended final judgment of dissolution of marriage, finding, in part, that the settlement award was a nonmarital asset, and therefore, not subject to equitable distribution. As to the condominium, the trial court found that the Wife carried her burden of establishing that the Husband intended to gift a one-half interest in the condominium to the Wife, and therefore, the condominium was a marital asset subject to equitable distribution. The trial court awarded the condominium and its contents to the Husband, and awarded the Wife $250,000 in lump sum alimony, which represents one-half of the equity in the condominium. Finally, as to alimony, the trial court, after weighing the statutory factors set forth in section 61.08(2), Florida Statutes (2008), awarded permanent periodic alimony to the Wife in the amount of $5,500 per month.
 

 II. Issues on Appeal
 

 The Husband has raised two issues on appeal meriting discussion. First, whether the trial court abused its discretion by finding that the Husband intended to gift a one-half interest in the condominium to the Wife, and awarding $250,000 in lump sum alimony to the Wife, in order to achieve equitable distribution of the marital asset. Second, whether the trial court abused its discretion by awarding permanent periodic alimony to the Wife, and if the trial court did not abuse its discretion, was the amount awarded an abuse of discretion.
 

 
 *622
 

 HI. Analysis
 

 A.
 
 Whether the Trial Court Abused its Discretion by Finding that the Husband Intended, to Gift an Interest in the Condominium to the Wife, and by Awarding Lump Sum Alimony to the Wife to Achieve Equitable Distribution
 

 The Husband contends that the trial court abused its discretion by finding that the Wife met her burden of establishing that the Husband intended to gift a one-half interest in the condominium to the Wife. Based on our review of the record, we cannot conclude that the trial court abused its discretion.
 

 In the instant case, it is undisputed that the condominium was purchased during the marriage with the Husband’s nonmari-tal funds and that the condominium was titled solely in the Husband’s name. The monthly expenses related to the condominium, including the mortgage payments, condominium association fees, and insurance payments, were also paid with the Husband’s nonmarital funds. Therefore, at trial, the Wife was required to establish that the Husband intended to gift to her a one-half interest in the condominium, by demonstrating “(1) donative intent, (2) delivery or possession of the gift, and (3) surrender of dominion and control of the gift.”
 
 Mills v. Mills,
 
 845 So.2d 230, 233 (Fla. 3d DCA 2003);
 
 see also
 
 § 61.075(6)(a)(l)(c), Fla. Stat. (2008) (providing that marital asset includes “[ijnter-spousal gifts during the marriage”).
 

 The evidence at trial was that the Husband agreed to purchase the condominium and move to Miami Beach because the Wife wanted to relocate to Miami to be close to her grandchild; the Wife attended the closing and signed the mortgage on the property; the Husband informed the Wife that he purchased the condominium for both of them; the Husband and Wife are named on the homeowner’s insurance policy; the parties’ names appear on sales receipts for the purchase of approximately $25,000 in furniture and accessories used to furnish the condominium; and the condominium became the parties’ marital residence, which the Wife assisted in maintaining for the parties. Based on the evidence presented at trial and after judging the credibility of the witnesses, the trial court found that the Husband intended to deliver to the Wife a one-half interest in the condominium; the Husband intended to divest himself of all dominion and control over a one-half interest in the condominium; and that the Wife accepted a one-half interest in the condominium. As the trial court’s findings are supported by the record and we cannot find that the trial court abused its discretion, we affirm the trial court’s finding that the Husband intended to gift a one-half interest in the condominium to the Wife. Moreover, we affirm the award of $250,000 in lump sum alimony to the Wife, as the award was made to achieve equitable distribution of the marital assets, and the evidence presented at trial demonstrates that the Husband has the ability to pay the lump sum alimony.
 
 See Glazner v. Glazner,
 
 693 So.2d 650, 652 (Fla. 5th DCA
 
 1997) (“[T]o
 
 ensure equitable distribution of assets, lump sum alimony is properly awarded only when the evidence reflects a justification for such an award and the ability of the paying spouse to make the payment “without substantially endangering his or her economic status.’ ”) (quoting
 
 Canakaris v. Canakaris,
 
 382 So.2d
 
 1197,
 
 1201 (Fla.1980));
 
 see also Miulli v. Miulli,
 
 832 So.2d 963, 964 (Fla. 2d DCA 2002) (holding that lump sum alimony may be awarded “for the purpose of achieving equitable distribution”).
 

 
 *623
 
 B.
 
 Whether the Trial Court Abused its Discretion by Awarding Permanent Periodic Alimony to the Wife and Whether the Amount Awarded was an Abuse of Discretion
 

 The Husband contends that based on the statutory factors set forth in section 61.08(2), Florida Statutes (2008),
 
 [2]
 
 the trial court abused its discretion by awarding permanent periodic alimony to the Wife. We agree.
 

 “Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established during the marriage of the parties.”
 
 Rosecan v. Springer,
 
 845 So.2d 927, 928 (Fla. 4th DCA 2003) (quoting
 
 Zeigler v. Zeigler,
 
 635 So.2d 50, 53 (Fla. 1st DCA 1994)). At trial, the undisputed evidence demonstrated that the parties’ marriage lasted approximately 7.5 years and produced no children, and at the time of the final hearing on the petition for dissolution of marriage, the Wife was fifty-four years old and the Husband, who was permanently disabled, was sixty-two years old. During the first 3.5 years of the parties’ 7.5 year marriage, both parties supported the marital household — the Wife by working as a housekeeper earning approximately $400 per week and the Husband by contributing his disability benefits. After the Husband received the medical malpractice settlement in 2002, the Wife did not work for approximately two years, and in 2004, she opened and operated a used car business that she closed in 2005. For the remainder of the 7.5 year marriage, the Husband supported the Wife. While in New York, the parties lived in a humble apartment and maintained a modest lifestyle.
 

 Approximately seven months after receiving the settlement, the Husband purchased the condominium in Miami Beach to appease the Wife’s desire to live close to her grandchild. Although the condominium was relatively expensive (valued at approximately $715,000 at the time of the final hearing), it was undisputed that the parties continued to maintain their modest lifestyle while living in Florida.
 

 At the final hearing, the Wife presented evidence as to her physical health. The trial court found that the Wife has “serious chronic health problems,” including knee problems, which will likely require a bilateral knee replacement; thyroid disease; calcaneal spur and Achilles tendinitis on her left foot; anxiety; and high blood pressure. The trial court found that the Wife’s “serious chronic health problems” will “sharply limit her earning ability,” and that the Wife “has no real transferable work skills.” Based on the Wife’s needs and the Husband’s ability to pay, the trial
 
 *624
 
 court awarded the Wife $5,500 per month in periodic permanent alimony.
 

 In this appeal, the Husband disputes the trial court’s findings that the Wife has “serious chronic health problems,” observing that the Wife did not seek medical care for the majority of her complained-of maladies until
 
 after
 
 the Husband petitioned for divorce in July 2006. We agree with the Husband’s characterization of the timing of the Wife’s medical attention, but nonetheless agree that the evidence reflects that the Wife does have health problems. Significantly, however, the Wife’s physician testified that, even taking into account the Wife’s physical condition, the Wife is still capable of working in a sedentary occupation.
 

 Although the trial court focused on the Husband’s financial resources, the trial court ignored the Wife’s ability to secure employment and earn a living. The trial court heard testimony from the vocational evaluation specialist hired by the Husband and the rehabilitation consultant hired by the Wife. Both experts opined that the Wife is employable in jobs rated as having sedentary physical demands, and that the Wife, even taking into consideration her health and limited skills, is capable of earning approximately $19,000 per year without training. Moreover, the Wife’s expert testified that the Wife is capable of earning approximately $28,000 per year with training, which would include the Wife taking one year of English courses and acquiring either an Associate’s Degree or a Certificate of Competency. The Wile’s expert also testified that the Wife’s work life expectancy would be extended by four years if she is retrained. Furthermore, the record demonstrates that the Wife is capable of being retrained. For example, the Wife took numerous English courses, passed the GED test in English, and passed the United States Naturalization test in English. In addition to working as a housekeeper and owning and operating a used car business, the Wife has worked as a nurse assistant, a seamstress, an independent sales consultant for a cosmetics company, and a masseuse. While we recognize that many of these occupations may not be feasible due to her medical issues, her employment history indicates that she is capable of being retrained.
 

 In challenging the award of permanent periodic -alimony and the amount awarded, the Husband also argues that the final financial affidavit submitted by the Wife, which is titled “Second Amendment to Wife’s Preliminary Family Law Financial Affidavit,” inaccurately reflects her monthly expenses. We agree.
 

 A review of the Wife’s financial affidavit reflects a monthly housing expense of $3,569.06, which includes the mortgage, homeowner’s insurance, special assessment, maintenance, and master assessment on the condominium. As the Husband correctly points out, this figure does not accurately reflect the Wife’s monthly housing expenses because the Husband paid all expenses related to the condominium while the divorce proceeding was pending, and does not accurately reflect her future housing expenses as the condominium was ultimately awarded to the Husband. Furthermore, the record does not reflect that the Wife made any attempt to estimate her monthly housing expenses if required to live anywhere but the condominium. Finally, without conducting a detailed analysis of the Wife’s claimed monthly expenses, clearly, the financial affidavit contains exaggerations and does not accurately reflect the Wife’s monthly expenses. For example, at the final hearing, the Wife acknowledged that the monthly food expense on her financial affidavit was
 
 *625
 
 based on their joint food expenses
 
 during
 
 the marriage.
 

 Finally, we note that the record on appeal indicates that, although the Wife does have medical problems, the Wife continues to maintain a relatively active life. For example, the Wife, who was awarded the parties’ vehicle, still drives; attends church about three times a week, three hours per visit; takes her dog to the park for two hours each day; goes to the beauty salon (spending $310 per month); and shops.
 

 Based on the evidence presented, we conclude that the trial court abused its discretion by awarding permanent periodic alimony to the Wife where this was a short-term marriage,
 
 see Green v. Green,
 
 672 So.2d 49, 51 (Fla. 4th DCA 1996) (holding that, as to short-term marriages, “permanent alimony is inappropriate unless a genuine inequity is created by the dissolution”); the Wife was awarded $250,000 in lump sum alimony; no children were born of the marriage; the parties maintained a simple and modest lifestyle; the Wife, even taking into consideration her health and limited skills, is immediately employable or can be retrained over a three to four year period; and the Wife continues to maintain a relatively active life. Accordingly, we reverse the award of permanent periodic alimony, and remand for the trial court to consider an award of rehabilitative alimony.
 
 [3]
 

 IV. Conclusion
 

 Based on the record before this Court, we conclude that (1) the trial court did not abuse its discretion by finding that the Husband intended to gift a one-half interest in the condominium to the Wife, and by awarding $250,000 in lump sum alimony to the Wife to achieve the equitable distribution of the marital assets, and therefore, affirm that portion of the amended final judgment; (2) the trial court abused its discretion by awarding permanent periodic alimony to the Wife, and therefore, reverse that portion of the amended final judgment, and remand to the trial court to consider rehabilitative alimony; and (3) the trial court did not err in entering the amended order granting the wife’s motion for relief from admissions.
 

 Affirmed in part, reversed in part, and remanded for further proceedings.
 

 [1]
 

 . The Husband raised an issue as to this order, but we conclude that the issue lacks merit.
 

 [2]
 

 . Section 61.08(2) provides as follows:
 

 (2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
 

 (a) The standard of living established during the marriage.
 

 (b) The duration of the marriage.
 

 (c) The age and the physical and emotional condition of each party.
 

 (d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
 

 (e)When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
 

 (0 The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
 

 (g) All sources of income available to either party.
 

 The court may consider any other factor necessary to do equity and justice between the parties.
 

 [3]
 

 . As we have reversed the award of permanent periodic alimony, we do not address whether the amount awarded was an abuse of discretion.