DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TIMOTHY I. HOOKER,**
Appellant,

v.

**NANCY HOOKER,**
Appellee.

No. 4D13-1841

[August 26, 2015]

Appeal and cross-appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Gregory M. Keyser, Judge; L.T. Case No. 502010DR004790XXXXNB.

Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, and Melinda P. Gamot of The Gamot Law Firm, P.L., Palm Beach Gardens, for appellant/cross-appellee.

Susan G. Chopin of Chopin & Chopin, LP, West Palm Beach, for appellee/cross-appellant.

FORST, J.

Appellant Timothy Hooker ("the Husband") appeals the amended final judgment of dissolution, dissolving his marriage to Appellee Nancy Hooker ("the Wife"). The Husband challenges the trial court's finding as to the Wife's interest in certain properties acquired during the marriage by the Husband's separate non-marital funds. The Wife cross-appeals, challenging certain findings as to division of the properties at issue by percentages, one of the Husband's bank accounts, and the trial court's denial of her request for attorneys' fees. We agree with the Husband that there is a lack of evidence to support the trial court's finding that the Husband gifted an interest in the Hooker Hollow property to the Wife, and we reverse on that issue. However, we disagree with his same contention as to the Lake George property, and we thus affirm on that issue. We also affirm on all issues raised in the Wife's cross-appeal.

**Background**

The parties were married in 1987 in New York. They did not have any significant outside employment during the marriage. Instead, they were provided for financially by the Husband's pre-marital trust fund assets and spent their time raising their children and training, breeding, and showing horses.

The parties executed a prenuptial agreement to keep their substantial pre-marital assets separate. The agreement listed certain assets to be kept separate from the marital estate, "[t]ogether with any and all identifiable appreciation, substitution, improvements, additions and/or replacements of or to any of the property described." The document further provided, "This Agreement shall not prevent either party from making intervivos or testamentary provisions for the benefit of the other inconsistent herewith."

In 1989, the parties moved to Florida. The Wife testified that they heard about vacant land being available in Wellington. Interested persons needed to purchase a lottery ticket for the chance to purchase one of the lots. The Wife's father funded the purchase of the lottery ticket. The parties obtained the option to purchase a lot and the Husband did so with non-marital funds. While only the Husband signed the original purchase money mortgage for the land and the promissory note, both parties signed a later mortgage document for a construction loan.

This property was developed into a working horse farm and home. The parties lived in an apartment above the stables, which was the marital home throughout the majority of the marriage. The Wife was in charge of furnishing the apartment and helped clean and care for the stables and horses. The Husband also was involved in the day-to-day management and training of the horses as part of the business.

Later, the Wife expressed a desire to have a summer home in the northeast to be near her childhood home and to have greater access to the horse shows in the region. In 1997, after about two years of searching, the Husband purchased a vacant lot in Lake George, New York with his non-marital assets while the Wife was in Florida with the children. The Husband sent the Wife a card for their tenth wedding anniversary with a picture of the lot. The mortgage on that property was in the Husband's name alone and the Wife never signed any of the debt related to that loan.

The Wife was deeply involved in designing and building the home at Lake George. She also purchased some furnishings and incidentals for the home. The Wife believed she owned the home with the Husband because it was a family home where they lived. The Husband did not

2

remember telling the Wife whether she was an owner of the Lake George property.

Also in 1997, the Husband sought to turn the Florida property into a corporation and transfer part of the title to another entity. Only the Husband was listed as the seller, but both parties signed the warranty deed transferring title of the property to the new corporation, known as Hooker Hollow, LLC.[1] The deed specified that this property was not the Wife's homestead, and the Wife signed the deed only to release any and all homestead rights she may have had to the property. The Wife did not believe she was giving up any interest she believed she had in the property by signing the deed and the Husband never told her that she did not have any interest in the property. However, only the Husband's name appears in the Articles of Incorporation document for Hooker Hollow, LLC as an officer/director of that entity, which now owned the whole property. Fifty percent of the stock of the corporation was then transferred to Trelawny Farm. The Husband paid off the mortgage on the property with the proceeds from the sale.

In 2010, Trelawny Farm triggered a buy/sell provision in the contract to buy the other 50 percent interest in Hooker Hollow. The same day the contract for sale was signed, the Wife filed for dissolution of marriage. At the same time, the Wife filed a lis pendens on Hooker Hollow and a motion to freeze the proceeds of the sale of that property pending the outcome of the dissolution.

During the pendency of the dissolution proceedings, the parties entered into an agreed order that the Wife would receive $1 million from the sale proceeds of Hooker Hollow at closing, representing a partial equitable distribution payment. The parties reserved all claims and defenses as to this distribution for trial. This allowed for the completion of the sale of Hooker Hollow to Trelawny Farm. As in the first transaction, only the Husband was recognized as a selling party, but the Wife signed a transfer deed waiving any homestead rights she may have had in the property. Also attached to the sale documents was an affidavit of the Husband, swearing to the fact that the Husband and Trelawny Farm are the only members of Hooker Hollow, LLC and have the only interests in the property.

Following a trial on the petition for dissolution, the trial court issued a detailed final judgment. Relevant to the appeals, the trial court determined that Husband had traced all of his assets acquired during the marriage back to his pre-marital assets, including the Hooker Hollow and

---

[1] Hereinafter, this property will be referenced only as "Hooker Hollow."

Lake George properties. However, the court found that the Wife had an interest in the Hooker Hollow and Lake George properties through interspousal gift. As such, the trial court awarded the Wife 50% of the values of Hooker Hollow and Lake George.

The Husband moved for rehearing, primarily challenging the trial court's determinations as to the interspousal gift to the Wife of an interest in Hooker Hollow and Lake George. The motion was granted after a non-evidentiary hearing was held.

The trial court then issued a more detailed amended final judgment. The trial court maintained its finding that, although the Hooker Hollow and Lake George properties were purchased with the Husband's non-marital assets and were titled in his name alone, they should be considered marital assets because the Husband made an interspousal gift of an interest to the Wife, with their actions showing joint ownership. However, based on the rehearing, the trial court determined that an unequal distribution was warranted because of the substantial financial contribution of the Husband. Therefore, the court awarded 66% interest in the Hooker Hollow property to the Husband and the remaining 34% to the Wife, and awarded 75% interest in the Lake George property to the Husband and the remaining 25% to the Wife. This appeal and cross-appeal followed.

**Analysis**

We review the determinations of a trial court in regards to a dissolution judgment for an abuse of discretion. *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980). However, we review the legal conclusions *de novo*. *Mondello v. Torres*, 47 So. 3d 389, 392 (Fla. 4th DCA 2010).

In the instant case, it is undisputed that the Husband purchased both the Hooker Hollow and Lake George properties with funds that can be traced to his pre-marital assets kept separate by the parties' prenuptial agreement. Because the prenuptial agreement provides that any appreciation of those assets remains separate, the only way the Wife can claim an interest in the Hooker Hollow and Lake George properties is by interspousal gift. An interspousal gift is established by showing "'(1) donative intent, (2) delivery or possession of the gift, and (3) surrender of dominion and control of the gift.'" *Vigo v. Vigo*, 15 So. 3d 619, 622 (Fla. 3d DCA 2009) (quoting *Mills v. Mills*, 845 So. 2d 230, 233 (Fla. 3d DCA 2003)). The burden is on the party seeking to prove an interest in the property to show it was an interspousal gift. *Vigo*, 15 So. 3d at 622 (noting that the parties' condominium was purchased during the marriage with

4

the Husband's nonmarital funds and it was titled solely in the Husband's name, thus "at trial, the Wife was required to establish that the Husband intended to gift to her a one-half interest in the condominium").

"The question of donative intent is one of a preponderance of the credible evidence." *Laws v. Laws*, 364 So. 2d 798, 801 (Fla. 4th DCA 1978). Unsupported assertions in the testimony of either party are not dispositive of donative intent. *Id.* Additionally, "[a] clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos . . . ; and it has been held that this intention must be inconsistent with any other theory." *Kuebler v. Kuebler*, 131 So. 2d 211, 218 (Fla. 2d DCA 1961) (on petition for rehearing). "When . . . the grantor's intent is to be determined from the conflicting testimony of the parties, it is the responsibility of the trial court to evaluate the weight and credibility of that testimony to arrive at a determination." *Marsh v. Marsh*, 419 So. 2d 629, 630 (Fla. 1982).

In *Vigo*, upon which the trial court relied, the Third District affirmed a determination that a wife sufficiently established that her husband intended to gift her a one-half interest in a condominium, which was purchased during the marriage by the husband with his non-marital funds and titled solely in the husband's name, based on the following facts: (1) the husband agreed to purchase the condo in Miami Beach and move there because the wife wanted to relocate there; (2) the wife attended the closing and signed the mortgage on the property; (3) the husband informed the wife that he purchased the condo for both of them; (4) both parties were named on the homeowner's insurance policy; (5) the parties' names appeared on sales receipts for about $25,000 in furniture and accessories used to furnish the condo; and (6) the condo became the parties' marital residence, which the wife assisted in maintaining for the parties. *Vigo*, 15 So. 3d at 622. The trial court concluded that this evidence showed the husband's intent to divest himself of all dominion and control over a one-half interest in the property. *Id.* The Third District affirmed, finding no abuse of discretion. *Id.* This case assists in our determination as to each of the properties at issue in our present case.

## I.    The Hooker Hollow Property

With the Hooker Hollow property, the trial court found the following facts, which are supported by the record, to establish an interspousal gift of an interest in the property to the Wife:

5

- The property constituted the parties' primary marital residence throughout the vast majority of the marriage and was where the parties raised their children.

- The Wife was extremely and directly involved in all aspects of Hooker Hollow as a residence and business.

- Both parties signed a mortgage document for a construction loan on Hooker Hollow, as well as the transfer deed when changing the property from Hickstead Place to Hooker Hollow and then selling it to Trelawny Farm.

- The Wife believed that she had an interest in the property.

- The Wife's father purchased the lottery ticket giving the parties the option to purchase the Hooker Hollow land.

- The Husband never told the Wife that she did not have an interest in the property, nor did he take any overt action to contradict the Wife's belief that she had an interest.

- The Wife could and did treat this property as her own, and she was not limited in incurring expenses, to be paid for by the Husband, for maintaining and operating the home.

However, none of these facts evidence a "clear and unmistakable intention on the part of the [Husband] to make a gift[,]" which is needed to establish donative intent. *Kuebler*, 131 So. 2d at 218. To the contrary, there was no testimony that the Husband expressly stated or otherwise affirmatively acknowledged that the Wife had an interest in Hooker Hollow, rather only that the Wife believed that she had an interest because it was the family home and family business.

The trial court cited to *Vigo* in its finding of interspousal gift, and, while the facts in *Vigo* are quite similar to the present case, the key distinction is that the husband in *Vigo* informed the wife that he purchased the Miami Beach condo for both of them. *Vigo*, 15 So. 3d at 622. No such conversation occurred between the instant parties, and, as mentioned, the Wife cannot otherwise point to a clear intention of the Husband to make a gift. The Wife's only explanation for her belief in having an interest is that this was the family home and family business. However, a marital home is not automatically deemed a marital or shared asset. *See Embry v. Embry*, 650 So. 2d 190, 191 (Fla. 2d DCA 1995) (requiring the trial court

to specifically designate the marital home as a marital or non-marital asset).

The trial court also heavily relied on the fact that the Husband did not convey to the Wife that she did *not* have an interest in the properties or take an overt action to contradict her belief and that the Wife made significant contributions to the property. However, an overt action is not required to prove that an asset has not been gifted, and the provisions of the prenuptial agreement support this property being a non-marital asset unless the Wife could show the elements of a gift, including donative intent. Even though the Wife actively contributed to the appreciation of this property, the prenuptial agreement provided "*any and all* identifiable appreciation" remains non-marital. Without evidence of an intent on the part of the Husband to gift the Wife an interest in the property, his non-actions in regards to the property and the Wife's contributions to the property are of little relevance to the analysis of an interspousal gift.

Additionally, the Wife's name was kept off the title and the original mortgage for the property; when the Husband had an opportunity to make any donative intent clear through the creation of the corporation, he chose to keep the corporation solely in his name and subsequently excluded the Wife's name from the final sale of the property. The Wife's name was included in sale documents solely to establish that she did not have a homestead interest in the property, which does not evidence donative intent, but rather the Husband ensuring the buyer of unburdened title.

Under the preponderance of the credible evidence standard for finding donative intent, the facts found by the trial court do not evidence a clear donative intent by the Husband. *See Laws*, 364 So. 2d at 801. Rather, the facts regarding the Wife's involvement with Hooker Hollow simply evidence that the Wife took care of her residence, regardless of ownership. Furthermore, there are other business explanations for having the Wife as part of the construction loan mortgage document and the transfer deeds. What are most significant, though, are the facts that she never was liable on the loans and that her name never was included on any documents evidencing actual ownership when the Husband had multiple opportunities to acknowledge any interest he intended her to have. *But see Kuebler*, 131 So. 2d at 219 (holding that even being named on documents is not sufficient without donative intent). As such, we hold the trial court erred in finding that the Wife had an interest in the Hooker Hollow property by virtue of an interspousal gift.

## II. The Lake George Property

7

With the Lake George property, the trial court found the following facts, which are supported by the record, to establish an interspousal gift of an interest in the property to the Wife:

- The property constituted the family's summer residence throughout the vast majority of the marriage.

- The Wife was extremely and directly involved in all aspects of the Lake George property.

- The Wife understood from the Husband that she had an interest in this property as a wedding anniversary gift to her as evidenced by the Husband's anniversary card.

- The Husband never told the Wife that she did not have an interest in the property, nor did he take any overt action to contradict the Wife's belief that she had an interest.

- The Wife paid for some furnishings and incidentals for this residence from her separate funds.

- The Wife could and did treat the property as her own, and she was not limited in incurring expenses, to be paid for by the Husband, for maintaining and operating it.

Unlike with Hooker Hollow, these facts evidence sufficient donative intent to uphold the trial court's determination. The Husband's "clear and unmistakable" intention with the Lake George property was, at least in part, as a gift to the Wife, which was established through the Wife's testimony about the Husband sending her a card for their tenth wedding anniversary with a picture of the property. This was after the Wife had expressed her desire to have a home up north and both parties searched for a suitable property. Additionally, the Wife purchased some furnishings and incidentals for the home from her separate funds.

These facts are substantially more akin to those seen in *Vigo*, where the court concluded that an interspousal gift existed where the husband bought a property where the wife desired to live, where he told her the home was for both of them, and where the parties both contributed to furnishing the home, among other things. *Vigo*, 15 So. 3d at 622. While here the Wife's name does not appear on any of the official documents related to the Lake George property, this is not dispositive as donative intent was otherwise conveyed through the anniversary card.

Because there is evidence of donative intent with regards to the Lake George property, we turn to the remaining two elements of a gift: delivery or possession and surrender of dominion and control. *Id.* In regards to delivery or possession, we hold the trial court did not abuse its discretion in finding that delivery was made at the time the Wife obtained keys to the property and began to possess the property as her summer home according to the intention of the Husband. Also, in regards to the Husband's surrender of dominion and control of the property, the evidence is uncontroverted that the Wife had unfettered access to the home and made decisions on care and maintenance of the property with the ability to incur expenses on behalf of the Husband, evidencing the Husband's surrender of control to her, at least in part.

Because the evidence supports the trial court's determination that an interspousal gift of an interest in the Lake George property occurred, the property was subject to equitable distribution as a marital asset. *Id.* We therefore affirm the award of a 25% interest in the property to the Wife. As to the Wife's challenge of that percentage, arguing the trial court failed to make specific written findings to support the unequal distribution, we hold that the trial court made the appropriate findings as required under section 61.075, Florida Statutes (2010).

Section 61.075(1) allows for unequal distribution of an asset when the court finds it is justified based on a non-exhaustive list of relevant factors. The factors relevant here are: the contributions of each spouse to the marriage; each spouse's economic circumstances; desirability of retaining an asset; the contribution of each spouse to the acquisition and enhancement of an asset; and "[a]ny other factors necessary to do equity and justice between the parties." § 61.075(1), Fla. Stat. (2010). The statute also requires any distribution of marital assets to be supported by factual findings in the judgment based on competent substantial evidence in the record with reference to these statutory factors. § 61.075(3) Fla. Stat. (2010); *Peacock v. Peacock*, 879 So. 2d 96, 97 (Fla. 4th DCA 2004). Additionally, "[t]he fact that an asset is determined to be an interspousal gift and then characterized as a marital asset does not mandate that the asset be split equally when an unequal split is 'necessary to do equity and justice between the parties.'" *Williams v. Williams*, 686 So. 2d 805, 808 (Fla. 4th DCA 1997) (quoting § 61.075(1)(j), Fla. Stat. (1995)).

In the present case, the trial court made written factual findings based on competent substantial evidence in the record and with consideration of the statutory factors when ordering an unequal distribution of the Lake George property. The trial court specifically noted:

The primary factors considered by the Court are that the Husband's assets were primarily used to purchase these properties and the improvements, furniture and furnishings in these properties, and the Husband's assets were used to pay for the daily expenses for the family living in these residences and maintaining these residences. Apart from these financial contributions, the Wife did contribute substantially to all decisions related to these homes and the care and education of the children raised in these homes, and her services as a homemaker. The Court considered the other factors enumerated in Florida Statute §61.075(1), but primarily relies upon the financial contributions of the Husband to support unequal distribution of these properties to do equity and justice between the parties.

This statement, as well as the other detailed findings and analyses in the judgment, clearly evidences that the trial court complied with the requirements of the statute and appropriately considered the statutory factors, emphasizing which factors were most relevant under the circumstances of the case but maintaining that all were considered, in making its determination. *See* § 61.075(3), Fla. Stat. (2010).

The court's determination also is supported by the record where the facts indicate that the Husband was the sole financial contributor to the building and maintenance of Lake George from his separate non-marital funds. The trial court considered both parties' contributions and arrived at percentages that it determined reflected those contributions. The factors discussed in the judgment support those percentages as being fair and reasonable determinations of the trial court under the circumstances, especially where there was no obligation on the court to award equal distribution. *Williams*, 686 So. 2d at 808. The statute does not require the trial court to further justify the 25% award by assigning a specific dollar value to each party's contributions as the Wife suggests. To the contrary, a percentage value better represents what type of interest in the Lake George property the Husband intended to gift the Wife. As such, we find no merit in the Wife's argument in her cross-appeal and affirm the award of a 25% interest in the Lake George property to the Wife. We also affirm the remaining two issues in the Wife's cross-appeal without further comment.

**Conclusion**

Based on the foregoing, we reverse the amended final judgment as to

the trial court's determination that the Husband gifted an interest in the Hooker Hollow property to the Wife. This holding entails a reversal of the entire equitable distribution schedule, which the trial court must recalculate on remand after awarding 100% of the Hooker Hollow property to the Husband as his own non-marital property. *Banton v. Parker-Banton*, 756 So. 2d 155, 156 (Fla. 4th DCA 2000) ("When reversible error occurs with regard to valuation or distribution, the entire distribution scheme must be reversed and remanded to allow the trial court to ensure both parties receive equity and justice."). We affirm the amended final judgment in all other respects.

*Affirmed in part; Reversed in part and Remanded.*

STEVENSON and LEVINE, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

11