# Third District Court of Appeal

## State of Florida

Opinion filed March 3, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-611
Lower Tribunal No. 06-5924
_____

**Andres Suarez,**
Appellant,

vs.

**Elsa Suarez,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, David H. Young, Judge.

Corona Law Firm, P.A., and Ricardo Corona, Nina Tarafa and Yung Truong, for appellant.

S. Roy Law, P.A., and Stephanie E. Roy, for appellee.

Before EMAS, C.J., and SCALES and LOBREE, JJ.

SCALES, J.

Andres Suarez (the "Former Husband") appeals the trial court's March 2, 2020 order that, among other findings, holds the Former Husband in contempt for the Former Husband's failure to make certain lump sum alimony payments to Elsa Suarez (the "Former Wife") as required under the parties' September 7, 2006 marital settlement agreement ("MSA"). We affirm the order's findings of fact related to payments made by the Former Husband under the subject MSA provisions, because those findings are supported by competent substantial evidence. We also affirm the trial court's findings of fact and conclusions of law directed towards the Former Husband's laches defense.

Because, however, the language of the MSA is unambiguous, we vacate the trial court's findings of fact regarding the parties' intent that were made in reliance on parol evidence adduced at the evidentiary hearing. Concluding that, pursuant to the MSA's plain language, the subject payments were non-modifiable alimony payments for the equitable distribution of marital property, and therefore not subject to enforcement by contempt, we quash the portion of the order holding the Former Husband in contempt.

**I. Relevant Background**

The Former Wife and the Former Husband were married for twenty-two years. During this time, they founded and operated a Santeria church in Miami called the Ochosi Yoruba Church. They entered into the MSA in September 2006, and the MSA was incorporated into their final divorce decree on November 6, 2006.

The MSA provides that the Former Husband will pay alimony to the Former Wife in order to compensate the Former Wife for the value of her share of the Church, the real property the Church occupied, the marital home (which was located in the Church premises), and the non-profit organization that operated the church (the "Alimony Provision").

The Alimony Provision reads as follows:

ALIMONY: The Husband shall pay the Wife the amount of Three Hundred Thousand Dollars ($300,000.00) as Alimony. This money represents the Wife's claim of a half interest in the Ochosi Yoruba Church, Inc., which is the Husband's non-profit organization. The Husband will make to the Wife a lump sum payment of One Hundred and Fifty Thousand Dollars ($150,000.00) on the day of the execution of this agreement and shall make monthly payments of Four Thousand One Hundred Sixty-Six Dollars with Sixty-Seven Cents ($4,166.67) for a period of three (3) years beginning on the 1st of October 2006 for the remaining balance of $150,000.00.

The MSA provides that this obligation is non-modifiable and also provides that the Former Husband will retain ownership of both the real property (including the Church and the home) and the business organization.

3

The real property provision and the business provision of the MSA, both contained within a section titled "Equitable Division of Assets and Liabilities," read in relevant parts, as follows:

> REAL PROPERTY: As to the "Ochosi Yoruba Church" . . . The Home [sic] currently titled/financed in the corporation name of Ochosi Yoruba Church a non-profit organization. Both parties have agreed that the Husband shall retain the property. The Wife shall immediately quit claim her interest in said property to the Husband. The Husband agrees to be responsible for said mortgage and hold the Wife and Wife's credit harmless from any damage or responsibility. The Husband shall refinance the property in order to remove the Wife's name and credit off the property.

> BUSINESS: The parties founded a non-profit organization named "Ochosi Yoruba Church" and established a corporation under the same name . . . . The Wife has agreed to waive all rights and interest in said corporation.

In August 2018, approximately ten years after the last alimony payment was due, the Former Wife filed a Motion for Civil Contempt and Enforcement of Alimony ("the Motion"), claiming, among other things, that her Former Husband had failed to pay the alimony due her pursuant to the MSA's Alimony Provision. The Former Husband moved to dismiss the Motion, arguing that, as a matter of law: (i) the Former Wife's claim was barred by the doctrine of laches; and (ii) because the Alimony Provision was not for "support" of the Former Wife, the provision could not be enforced via the court's contempt powers. The trial court denied the Former Husband's

4

motion to dismiss, without prejudice to the trial court revisiting the issues after conducting an evidentiary hearing on the Motion.

After conducting the evidentiary hearing,[1] the trial court entered the detailed order on appeal. In its March 2, 2020 order, the trial court found that the MSA was "structurally ambiguous" and that the MSA contained "latent ambiguities on the face of the contract." Due to this ambiguity finding, the trial court relied upon the parol evidence adduced at the evidentiary hearing (admitted over the Former Husband's objection) to discern the parties' intent regarding the Alimony Provision. Based on this parol evidence, the trial court found that the parties' intent in drafting the Alimony Provision was for the Former Husband to provide alimony "support" payments to the Former Wife, therefore subjecting enforcement of the Alimony Provision to the court's contempt powers.

Also based on the evidence adduced at the evidentiary hearing, the trial court found that the Former Husband had made only $170,925 of the $300,000 in payments required under the Alimony Provision, and that the doctrine of laches was inapplicable to bar the Former Wife's claims because the Former Husband had not established the requisite prejudice. The trial

---

[1] The evidentiary hearing took place over two days: October 2, 2019 and January 16, 2020.

5

court granted the Former Wife's Motion, found the Former Husband in contempt, and sentenced the Former Husband to five days in jail. After finding that the Former Husband had the present ability to pay the purge amount of $5,000, the trial court gave the Former Husband ten days to pay the purge amount and ninety days to pay the remainder of the Alimony Provision obligation to the Former Wife. The Former Husband timely appealed the order.

**II. Analysis[2]**

*A. Support Alimony Versus Alimony for Equitable Distribution*

The principal issue in this case is whether the Former Husband's $300,000 alimony payment obligation in the MSA's Alimony Provision is for "support" of the Former Wife or, in the alternative, for the "equitable distribution of property." If, as the trial court determined after admitting parol evidence of the parties' intent, the payment obligation is for "support," then the trial court can enforce the obligation through its contempt powers. <u>See</u>

---

[2] We review *de novo* the trial court's construction of the MSA. <u>Law v. Law</u>, 299 So. 3d 505, 509 (Fla. 3d DCA 2020). We also review findings of ambiguity *de novo*. <u>Syverson v. Jones</u>, 10 So. 3d 1123, 1125 (Fla. 1st DCA 2009). We review the trial court's factual findings to determine whether they are supported by competent substantial evidence. <u>Hooker v. Hooker</u>, 220 So. 3d 397, 403 (Fla. 2017). Finally, we review a trial court ruling on the defense of laches for an abuse of discretion. <u>Dep't of Revenue ex rel. Thorman v. Holley</u>, 86 So. 3d 1199, 1202-03 (Fla. 1st DCA 2012).

Braswell v. Braswell, 881 So. 2d 1193, 1198 (Fla. 3d DCA 2004). If, however, the payment obligation is for the "equitable distribution of property," then in the enforcement of this obligation, "the only remedies are those available to creditors against debtors." Veiga v. State, 561 So. 2d 1335, 1336 (Fla. 5th DCA 1990).

It appears the trial court presumed that the Former Husband's $300,000 payment obligation was for *either* support alimony (enforceable by contempt) *or* equitable distribution of property (not enforceable by contempt), without recognizing that parties may agree to a hybrid species of non-modifiable, lump sum alimony that effects a distribution of marital property. Lump sum alimony may be awarded "to achieve equitable distribution of the marital assets." Vigo v. Vigo, 15 So. 3d 619, 622 (Fla. 3d DCA 2009); Miulli v. Miulli, 832 So. 2d 963, 964 (Fla. 2d DCA 2002). "It is well established that an award of lump sum alimony that effects a distribution of marital property is *not* enforceable by contempt." Bongiorno v. Yule, 920 So. 2d 1209, 1210 (Fla. 1st DCA 2006); Pipitone v. Pipitone, 23 So. 3d 131, 136 (Fla. 2d DCA 2002) (recognizing that "[p]ayments for equitable distribution . . . are not enforceable by contempt").

Essentially, the trial court found that, because the Former Husband's $300,000 payment obligation was included in the MSA provision labelled

7

"Alimony," and because the MSA contained a separate provision labelled "Equitable Division of Assets and Liabilities," the MSA was ambiguous as to whether the $300,000 payment was for "support" or "equitable distribution."[3] The trial court's reasoning is conspicuous in paragraph 26 of the order on appeal when it found: "The term 'Alimony' (twice mentioned in the same paragraph) should be interpreted for exactly what it suggests [sic] 'Alimony' and not as equitable distribution of assets as Husband would suggest."

Because of its determination that the Alimony Provision was ambiguous, the trial court admitted extensive parol evidence as to the parties' intent regarding this MSA provision and, based on such parol evidence, found that the Former Wife had limited earning capacity and intended to use the funds to buy a house. Therefore, the trial court determined, the lump sum alimony payment was for support.

While it is true that, where a court-approved marital settlement agreement does not specify the nature of the lump sum alimony, the trial

[3] The trial court's order supports its ambiguity finding by noting that the MSA was drafted by the Former Husband's attorney. It points to section 18(C) of the MSA wherein the parties release each other for any "alimony, support or maintenance," except as provided in the MSA. With regard to this release provision, the trial court concluded that such a provision would have been unnecessary unless the $300,000 payment obligation was characterized as a "support" payment. As discussed, *infra*, we disagree with the trial court's construction of this provision.

8

court must make the characterization in the context of the enforcement proceeding, Pipitone, 23 So. 3d at 136, it is equally true that, where a marital settlement agreement is unambiguous, the trial court errs by admitting parol evidence to vary the agreement's terms. See Kipp v. Kipp, 844 So. 2d 691, 694 (Fla. 4th DCA 2003). In interpreting a marital settlement agreement's terms to determine whether an ambiguity exists, the trial court must look beyond a single paragraph to the "nature and substance of the whole agreement." Pipitone, 23 So. 3d at 138.

With these principles in mind, our review of the entire MSA reveals no ambiguity regarding the parties' intent for the Former Husband's $300,000 payment obligation: it was a non-modifiable, lump sum alimony payment to be paid in exchange for the Former Wife's interests in the Church, the home, the real property and the business. The sentence in the Alimony Provision immediately following the Former Husband's $300,000 obligation unequivocally states: "This money represents the Wife's claim of a half interest in the Ochosi Yoruba Church, Inc. which is the Husband's non-profit organization."

While the Alimony Provision does not specifically delineate what property is included in the Wife's half interest in the Church, several provisions of the MSA under the heading "Equitable Division of Assets and

Liabilities" do describe the property being surrendered by the Former Wife, notably the real property and the business. In turn, the real property means both the Church building and the home as the premises comprise both. In furtherance of these provisions, section 11 of the MSA expressly requires the parties to execute "any deed, closing statement, bill of sale or transfer of title" necessary to carry out the MSA's terms.

In section 18(C) of the MSA, the parties release each other from "alimony, support or maintenance, except as set forth herein." Contrary to the trial court's conclusion (see footnote 3, *supra*), this provision does not render the MSA ambiguous. The provision simply states that each party is released from claims for "alimony, support or maintenance" other than those expressed in the Alimony Provision and section 9's child support obligations provision.

Based on our *de novo* review of the MSA, we conclude that the MSA unambiguously characterizes the Former Husband's lump sum alimony obligation as payment to effect a distribution of marital property. Therefore, we reverse those portions of the order determining that the Alimony Provision was ambiguous (i.e., paragraphs 17 through 29 of the order). Further, because certain factual findings contained in the trial court's order were reached based upon the trial court's erroneous determination that the

10

Alimony Provision was ambiguous, we vacate those portions of the order containing factual findings based on parol evidence admitted for the purpose of determining the parties' intent related to the Alimony Provision (i.e., paragraphs 30 through 37 of the order).

Concluding that the MSA's Alimony Provision obligation is to effect an equitable distribution of the couple's property, and therefore is not subject to contempt enforcement, we quash those portions of the order seeking to enforce the order through the trial court's contempt powers. See Bongiorno, 920 So. 2d at 1210.

*B. Other Factual Findings and Conclusions of Law in the Order*

The Former Husband also challenges the trial court's factual findings related to the Former Husband's payment history (i.e., paragraphs 38-58 of the order). Without further elaboration, we affirm those factual findings because they are supported by competent substantial evidence. See Hooker, 220 So. 3d at 403.

Finally, the Former Husband challenges the trial court's factual findings and conclusions of law related to the Former Husband's assertion that the Former Wife's claim is barred by the doctrine of laches (paragraphs 5

through 16 of the order). Again, without further elaboration, we affirm these findings and conclusions.[4]

**III. Conclusion**

Because we conclude that the parties intended the unambiguous Alimony Provision of the MSA to serve as a non-modifiable means to equitably distribute their marital property in the Church (including the value of the real property, their home and their business), we both vacate the trial court's findings of fact made in reliance of parol evidence and quash the portion of the order holding the Former Husband in contempt. We affirm the trial court's findings of fact and conclusions of law as they relate to the Former Husband's payments under the Alimony Provision because they are supported by competent substantial evidence. We also affirm the trial court's findings that the Former Wife's claim is not barred by laches. We remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, vacated in part, quashed in part, and remanded.

---

[4] While we affirm both the trial court's factual findings regarding the Former Husband's payment history and the trial court's factual findings and conclusions regarding the Former Husband's laches defense, we express no opinion as to whether remedies other than contempt are available to the Former Wife.